[No. F049066. Fifth Dist. Dec. 5, 2006.]

KATIE FAUGHN, a Minor, etc., et al., Plaintiffs and Appellants, v.
LEONARD PEREZ et al., Defendants and Respondents.

## Counsel

Law Offices of Marshall Silberberg, Marshall Silberberg, Adam P. Harris; Law Offices of Carl. A. McMahan and Carl A. McMahan for Plaintiffs and Appellants.

Clifford & Brown, Stephen T. Clifford, John R. Szewczyk and Daniel T. Clifford for Defendant and Respondent Bakersfield Memorial Hospital.

## Opinion

**DAWSON, J.**—Plaintiffs appeal from an order disqualifying Marshall Silberberg (Attorney Silberberg) from representing them in their lawsuit, which alleges that the negligence of defendant Bakersfield Memorial Hospital injured plaintiff Katie Faughn during her birth. The superior court granted Bakersfield Memorial Hospital's motion to disqualify Attorney Silberberg, pursuant to State Bar Rules of Professional Conduct, rule 3-310(E),[1] on the ground that he had "formerly represented Catholic Healthcare West, parent corporation of Bakersfield Memorial Hospital, in litigated matters that bear a substantial relationship to those matters that are embraced in the present litigation, and is presumed to have acquired confidential information" by virtue of the former representation.

Plaintiffs argue that the record does not contain sufficient evidence to support the determination that Attorney Silberberg's prior representation of corporate affiliates of Bakersfield Memorial Hospital was substantially related

---

[1] All further references to rules shall be to the Rules of Professional Conduct of the State Bar of California, unless otherwise indicated.

to his representation of plaintiffs in this case. We conclude that Bakersfield Memorial Hospital's motion to disqualify relied too heavily on inferences about facts that were within its control and that could have been disclosed without compromising confidential information. By omitting these facts, Bakersfield Memorial Hospital failed to carry its burden. Thus, its motion should have been denied.

Accordingly, the disqualification order is reversed.

## FACTS AND PROCEEDINGS

This medical malpractice case involves allegations that defendants were negligent in the management of the labor and delivery of an infant, which caused injuries to the mother and Erb's palsy (brachial plexus injury) to the infant, resulting in monetary damage to the parents.

Plaintiffs are Jennifer Faughn, as the guardian ad litem for her minor daughter and in her own right, and Allan Faughn. Attorney Carl McMahan has represented the plaintiffs since the outset of this lawsuit. Mr. McMahan associated Attorney Silberberg into the case as trial counsel in April 2005.

Defendants in the lawsuit are Leonard Perez, M.D., Bakersfield Memorial Hospital, and three Kaiser Permanente entities.[2] Bakersfield Memorial Hospital is a California nonprofit corporation. Its sole member is Catholic Healthcare West, a California nonprofit public benefit corporation (hereafter, Parent Corporation or CHW). Bakersfield Memorial Hospital owns Bakersfield Memorial Hospital of the same name. Parent Corporation and its subsidiary corporations own approximately 40 hospitals and health care facilities in California, Nevada, and Arizona.

Bakersfield Memorial Hospital's motion to disqualify Attorney Silberberg was supported by the declarations of three area claims managers employed by Parent Corporation—Eva Satori, Joseph Hale, and Barbara VanKoll—and the declaration of Derek Covert, the vice-president and general counsel of Parent Corporation. The three area claims managers are responsible for overseeing the defense of claims and lawsuits filed against hospitals located in California. Eva Satori oversees the defense of claims made against approximately 13 hospitals. Joseph Hale oversees claims made against approximately eight

---

[2] Bakersfield Memorial Hospital was the sole moving party below and is the only defendant responding in this appeal.

hospitals located in Northern California; at least seven of those hospitals are associated with the Mercy Healthcare Sacramento Region. Barbara VanKoll oversees claims made against approximately nine hospitals.

Parent Corporation administers the Catholic Healthcare West Hospital and Professional Liability Trust (hereafter CHW HPL Trust or the trust). The trust pays for the defense of, and assumes liability for, all claims and lawsuits brought against Parent Corporation's member hospitals and health care facilities, including Bakersfield Memorial Hospital.

Between January 2000 and mid-2003, when Attorney Silberberg was a shareholder in the law firm of La Follette, Johnson, De Haas, Fesler, Silberberg & Ames, he was retained by claims managers of Parent Corporation in five separate cases. All of the cases primarily involved birth injuries to infants. The cases were defended at the expense of CHW HPL Trust. The following is a summary of the five cases.[3]

*Prior Representation of Parent Corporation and Affiliates*

The case of *Haywood v. Douglas* (Super. Ct. Sacramento County, No. 00AS04184) concerned injuries sustained by an infant delivered on April 24, 2000. The child's mother filed the case alleging medical and hospital negligence in failing to properly monitor fetal heart rates. Correspondence between Parent Corporation and Attorney Silberberg shows that he was retained to represent (1) Parent Corporation, (2) Mercy Healthcare Sacramento, and (3) Mercy General Hospital.[4] Mr. Hale's declaration had attached a letter from him to Silberberg that identified (1) the individuals with whom Silberberg would be involved in handling the lawsuit and (2) materials that Silberberg was provided: "Since this is the first case assigned to you here in Sacramento, I have included a copy of our Defense Counsel Procedures. Your main contacts will be myself, and the MHS Regional Director, Risk &

---

[3] The declaration of Joseph Hale stated his search of the records, which involved identifying cases from a "claims run," showed that approximately 220 cases regarding the defense of Parent Corporation employees and member hospitals had been assigned to Attorney Silberberg's former law firm.

[4] The declarations do not indicate if Mercy Healthcare Sacramento and Mercy General Hospital are separate legal entities or are fictitious business names used by Parent Corporation. A letter from Joseph Hale to Silberberg states "that Mercy General Hospital is one of seven CHW hospitals associated with the Mercy Healthcare Sacramento Region" but does not indicate if Mercy General Hospital and Mercy Healthcare Sacramento are separate legal entities.

Safety Manager, Linda Ubaldi. Marge Matsuda is the MHS Claims Manager and is also an important contact at Ms. Ubaldi's office."

Attorney Silberberg provided Parent Corporation with case evaluations that included his analysis of the case, its potential defenses, and his opinions regarding possible damages exposure. He represented Parent Corporation's interests at two mediations and one settlement conference. The case settled in May 2004.

The case of *Galia v. Regents of the University of California* (Super. Ct. Sacramento County, No. 01AS04018) involved a failed attempt to induce labor for a large infant and a subsequent caesarian section in August 2000. The parents alleged that the nursing and medical staff failed to properly monitor the labor of the mother and to recognize the need to perform a caesarian section earlier. The complaint alleged the infant suffered brain damage and the mother suffered emotional distress. Mr. Hale's declaration states that Attorney Silberberg provided "a number of case evaluations that included analysis of the exposure and damages claims based on . . . reviews by experts that he had retained to review the case." The case was dismissed without prejudice in late 2003. Mr. Hale's declaration opined that Attorney Silberberg "acquired extensive knowledge of CHW's policies, litigation philosophy and attitudes by handling this litigation."[5]

The case of *Forrest Neander v. Dominican Santa Cruz Hospital* (Super. Ct. Santa Cruz County, No. CV147742) concerned injuries sustained by an infant delivered on August 9, 2000. The complaint alleged the infant was injured as a result of medical and hospital negligence involving the failure to manage the mother's labor and respond to nonreassuring fetal heart rates. A December 5, 2003, letter from Attorney Silberberg to Kathy Dean, a risk manager for Dominican Santa Cruz Hospital, states that "we have been requested by CHW to represent the interests of Dominican Santa Cruz Hospital" in the case.[6]

The November 24, 2003, letter from Ms. VanKoll to Attorney Silberberg, in which she asked him to represent Bakersfield Memorial Hospital in the

---

[5] Attorney Silberberg attacks this statement and a similar one included in Eva Satori's declaration on the grounds that those statements are conclusory, fail to state that the information purportedly acquired actually was confidential, and were not supported by evidence. Thus, he argues that the statements are not substantial evidence.

[6] The declarations and attached correspondence do not indicate if Dominican Santa Cruz Hospital or Mercy Hospital, Folsom Center are separate legal entities or are fictitious business names used by Parent Corporation.

case, instructed him to provide an initial case evaluation and litigation management budget within 60 days and status reports every 90 days. The letter also stated: "9. Within six (6) months of this assignment, we need to be able to evaluate our financial exposure. It is imperative that you provide the statistical information on the plaintiff (please refer to the Plaintiff Biographical/Damages Data sheet in the Defense Counsel Procedures)."

Attorney Silberberg (1) prepared an initial case evaluation that analyzed facts and potential defenses and presented his opinion regarding the damages exposure and (2) retained experts. The declaration of Ms. VanKoll asserts Silberberg "took the deposition of the mother on April 1, 2004." Attorney Silberberg's declaration states the deposition of the mother was taken by another attorney in Seattle, Washington on March 25, 2004, while he was in trial in the Superior Court of Orange County.

Ms. VanKoll's declaration states that after Attorney Silberberg left his former law firm, she learned that the attorney representing the Neanders had been told by Attorney Silberberg that Parent Corporation was interested in settling the case. In the view of Ms. VanKoll, Attorney Silberberg's statement about Parent Corporation's interest in settling indicated his "knowledge of information material to the evaluation and settlement of the CHW cases."

The case of *Toledo v. St. Mary Medical Center* concerned injuries sustained by an infant delivered on March 9, 2000. The mother filed an arbitration claim alleging the infant was injured as a result of medical and hospital negligence involving the failure to properly monitor fetal heart rates. Attorney Silberberg was retained to represent Parent Corporation and its employees at St. Mary Medical Center. He provided case evaluations that included an analysis of the claim, potential defenses, and his opinions regarding possible damages exposure. The declaration of Eva Satori includes her view that Attorney Silberberg "exhibited an extensive knowledge of CHW's policies and procedures concerning settlement and trial strategy." The case was settled prior to binding arbitration in May 2004.

The lawsuit of *Llamas v. Robert F. Kennedy Medical Center* concerned the postpartum death of a mother allegedly involving medical or hospital negligence based on nurse misconduct. Eva Satori's declaration states that Attorney Silberberg "played an integral role in the defense of Robert F. Kennedy

Medical Center and CHW by providing a number of case evaluations that included analysis of the claim, potential defenses, and his opinions regarding possible damages exposure." The matter settled in May 2002.

*Motion to Disqualify*

In April 2005, Attorney Silberberg was associated into this case. It appears that less than a year earlier he was representing Parent Corporation or its affiliates in other matters.

During May 2005, the area claims managers searched records of Parent Corporation for cases in which Attorney Silberberg was retained to act as defense counsel. Their searches revealed the five cases described earlier.

In late June 2005, the law firm of Clifford & Brown completed Bakersfield Memorial Hospital's motion to recuse Attorney Silberberg as plaintiffs' counsel and the declarations supporting the motion. Attorney Silberberg filed an opposition to the motion along with his supporting declaration. Bakersfield Memorial Hospital filed a reply and the motion was heard on August 18, 2005.

Rule 3-310(E) prohibits a lawyer from accepting employment adverse to a former client where the lawyer "has obtained confidential information material to the employment." Bakersfield Memorial Hospital asserted that Attorney Silberberg's representation of plaintiffs was prohibited by rule 3-310(E) because his representation of plaintiffs would be substantially related to his past representation of Parent Corporation and affiliated hospitals in the five cases described earlier.

Attorney Silberberg asserted that his representation of other hospitals in the CHW system did not cause him to learn anything about Bakersfield Memorial Hospital. He further asserted that he never represented Bakersfield Memorial Hospital, talked to any of its employees, received any confidential information related to Bakersfield Memorial Hospital, and has never been privy to any of Bakersfield Memorial Hospital's strategies, policies, or protocol (assuming such exist). With respect to the factual and legal similarity of the matters, Attorney Silberberg pointed out that none of the five earlier matters involved a shoulder dystocia injury that resulted in the infant suffering Erb's palsy.

After hearing argument, the superior court granted the motion to disqualify. Plaintiffs appeal from the ensuing order, which is appealable. (*Meehan v.*

*Hopps* (1955) 45 Cal.2d 213, 215–216 [288 P.2d 267]; *In re Lee G.* (1992) 1 Cal.App.4th 17, 25, fn. 4 [1 Cal.Rptr.2d 375].)

## DISCUSSION

### I. *Standard of Review*

The standards used by an appellate court in reviewing a motion to disqualify counsel often are described by quoting the following paragraph from the California Supreme Court's opinion in *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil*): "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (*Id.* at pp. 1143–1144.)

When the declarations submitted in connection with the motion to disqualify do not contain conflicting descriptions of the facts, an appellate court need not defer to the inferences drawn by the trial court in resolving factual disputes for which the parties did not submit direct evidence. (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1144; *Collins v. State of California* (2004) 121 Cal.App.4th 1112, 1123 [18 Cal.Rptr.3d 112].) In such a situation, the appellate court is concerned with the legal significance of the undisputed facts in the record and reviews the trial court's decision as a question of law. (*Collins,* at p. 1123.)

The question about which inferences should be drawn from the undisputed facts is significant in cases where the moving party relies on inferences rather than submitting direct evidence of facts that are within its control. Sometimes, omitted facts become conspicuous by their omission (see *Abatti v. Eldridge* (1980) 112 Cal.App.3d 411, 416 [169 Cal.Rptr. 330]), particularly where the motion involved, like a motion to disqualify counsel, has the potential for tactical abuse. (See *Oldham v. California Capital Fund,*

*Inc.* (2003) 109 Cal.App.4th 421 [134 Cal.Rptr.2d 744] [motion to approve settlement over objections of judgment lien creditor]; *SpeeDee Oil, supra,* 20 Cal.4th at pp. 1144–1145 [the need for careful examination of motions to disqualify counsel is based on the important interests involved and the possibility of tactical abuse].)

■ Presenting direct evidence of facts to support a motion to disqualify counsel that is related to confidential information is constrained, of course, by the need to avoid the disclosure of the former client's confidences and secrets. (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 710 [3 Cal.Rptr.3d 877] (*Jessen*), citing *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1453 [280 Cal.Rptr. 614] (*Ahmanson*).) One method of presenting evidence and protecting its confidential nature is to file the documents with the court under seal for in camera review. (E.g., *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 236 [81 Cal.Rptr.2d 425] (*Morrison*) [detailed reports about pending cases prepared by counsel submitted for in camera review].)

## II. *Disqualification of Counsel*

### A. *Prohibition Against Representing Adverse Interests*

■ An attorney may not, "without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." (Rule 3-310(E).)

#### 1. *Simultaneous representation*

Courts applying rule 3-310(E) have created different standards for different situations. A question that is critical to identifying the correct standard is whether the attorney is simultaneously or successively representing clients with adverse interests. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283–284 [36 Cal.Rptr.2d 537, 885 P.2d 950] (*Flatt*).)

This appeal does not involve simultaneous representation of clients. Therefore, our analysis is focused on the rules applicable to situations involving successive representation. (*Flatt, supra,* 9 Cal.4th at pp. 283–284.)

## 2. *Successive representation*

■ In successive representation cases, a party may obtain the disqualification of an attorney by establishing that the targeted attorney (1) has actual knowledge of material confidential information or (2) is presumed to have acquired confidential information because of the relationship between the prior representation and the current representation.

### a. *Actual acquisition of confidential information*

The acquisition of material confidential information, which often is difficult to prove, requires the disqualification of the attorney. (E.g., *Pound v. DeMera DeMera Cameron* (2005) 135 Cal.App.4th 70 [36 Cal.Rptr.3d 922] (*Pound*) [lawyer associated into case had actual knowledge of confidential information; Ct. App., Fifth Dist. required disqualification of lawyer and law firm].)

### b. *Presumed acquisition of confidential information*

A presumption that the targeted attorney obtained confidential information during the prior attorney-client relationship applies to two different situations. Where the attorney was involved personally and directly in providing legal advice and services to the former client, the substantial relationship test is used to determine whether the presumption applies. (E.g., *Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671 [14 Cal.Rptr.3d 618].) In situations where the former attorney-client relationship was peripheral or attenuated, the modified substantial relationship test is used to determine whether the presumption applies.[7] (E.g., *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1340 [104 Cal.Rptr.2d 116] (*Adams*); see *Jessen, supra,* 111 Cal.App.4th at p. 710; Vapnek et al., Cal. Practice Guide: Professional Responsibility, *supra,* ¶ 4:207.7, pp. 4-62 to 4-63 ["modified" version of substantial relationship test].)

## B. *Actual Acquisition of Confidential Information Was Not Shown*

Bakersfield Memorial Hospital's moving papers asserted that Attorney Silberberg "obtained confidential and privileged information as a result of his

---

[7] Often, these situations arise when an attorney switches law firms and the attorney's new firm becomes involved in litigation against a client of the attorney's former firm. (See Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2006) ¶¶ 4:207.5 to 4:207.7, pp. 4-61 to 4-63 [disqualification of firm-switching attorneys].)

prior representation of other CHW affiliates." "A former client may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client." (*Ahmanson, supra,* 229 Cal.App.3d at p. 1452.) Here, Bakersfield Memorial Hospital did not show that Attorney Silberberg actually possessed confidential information adverse to it or Parent Corporation and, notwithstanding the general assertion made in its moving papers, did not rely on Attorney Silberberg's actual knowledge of confidential information as the basis for its motion. (Cf. *Pound, supra,* 135 Cal.App.4th 70.)[8]

Accordingly, the order disqualifying Attorney Silberberg cannot be upheld on the grounds of actual acquisition of confidential information.

### C. *Application of the Substantial Relationship Test*

Bakersfield Memorial Hospital's moving papers focused on the argument that Attorney Silberberg should be disqualified because a substantial relationship existed between his former representation of CHW and his current representation of plaintiffs in their lawsuit against it. The superior court's written order granting the motion to recuse stated that Attorney Silberberg "formerly represented [CHW] . . . in litigated matters that bear a substantial relationship to those matters that are embraced in the present litigation, and is presumed to have acquired confidential information" thereby.

On appeal, Bakersfield Memorial Hospital argues that the substantial relationship test applies and that the superior court's findings under that test are supported by substantial evidence. "[W]here a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations." (*Flatt, supra,* 9 Cal.4th at p. 283.) This court previously has described the substantial relationship test as follows: "Thus, successive representations will be 'substantially related' when the evidence before the trial court supports a rational conclusion that

---

[8] In *Pound,* a declaration supporting the motion to disqualify stated that the attorney-declarant had a one-hour discussion with the disqualified attorney and "discussed the case in specific terms, including issues, personalities, vulnerabilities, and other topics properly described as attorney work product." (*Pound, supra,* 135 Cal.App.4th at p. 74.) Because attorney work product is confidential information, this court concluded that the superior court's finding that the disqualified attorney obtained confidential information was supported by substantial evidence. (*Id.* at p. 76.)

information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." (*Jessen, supra*, 111 Cal.App.4th at p. 713.)

This definition of "substantially related" is essentially the same as the formulation found in section 132 of the Restatement Third of the Law Governing Lawyers, which provides that the present representation will be considered "substantially related" to the prior representation if there is a substantial risk that the present representation will involve the use of confidential information acquired in the course of the prior representation. (*Farris, supra*, 119 Cal.App.4th at p. 680.)

### 1. *Relationship of decision makers involved in the representations*

Bakersfield Memorial Hospital makes the following argument to support its position that Attorney Silberberg's prior representations of Parent Corporation and its affiliates are substantially related to the current case: "[I]n this case, as it does in all cases against its member entities, CHW and its defense Trust directly control the subject litigation. [Bakersfield Memorial Hospital] does not play a role in making any decisions about the defense of the claim. CHW is also solely responsible for payment of costs of defense and payment of any settlement or resulting judgment. [Citation.]"

To analyze this argument, we start by examining the assertions of fact and whether they are matters of inference or are supported by direct evidence.

The first assertions of fact—that Parent Corporation and CHW HPL Trust (1) directly control all litigation against its member entities or (2) directly control the action that plaintiffs have filed against Bakersfield Memorial Hospital—are not supported by the declarations submitted by Bakersfield Memorial Hospital with its motion.[9] Instead, we are asked to accept these facts based on inference.

Similarly, the factual assertion that Bakersfield Memorial Hospital plays no role in making any decision about the defense of plaintiffs' action is not supported directly by the declarations. We are asked to infer this fact.

---

[9] As a result, no citation to supporting evidence in the record was provided. (See Cal. Rules of Court, rule 14(a)(1)(C) [each appellate brief must support any reference to a matter in the record by a citation to the record]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011 [113 Cal.Rptr.2d 625] [applying Cal. Rules of Court, former rule 15(a), the predecessor to rule 14(a)].)

The factual assertion that CHW pays the cost of defense and any liability presumably is meant to refer to the CHW HPL Trust's role. This assertion is supported by a citation to the declaration of Derek Covert, the vice-president and general counsel of CHW, and paragraph 4 of that declaration describes the role of the CHW HPL Trust in assuming the liability of CHW affiliates in hospital professional liability cases. Consequently, Bakersfield Memorial Hospital has established this fact regarding costs and liability and we need not infer its existence.

One reason Bakersfield Memorial Hospital made the foregoing assertions of fact regarding how cases are controlled was to support its position that Attorney Silberberg knows and understands "exactly how CHW approached [birth injury] cases"—particularly "the claims handling practices of CHW and its claims managers, the manner in which cases were investigated, evaluated, analyzed, and prepared for trial, [and] the manner and purpose in the way CHW approached settlement negotiations and trial . . . ." Bakersfield Memorial Hospital argues that this was crucial information and could be used to plaintiffs' advantage in their suit against it.

What is the evidence in the record that leads to inferences that conflict with Bakersfield Memorial Hospital's assertions regarding centralized control and its exclusion from the decisionmaking process?

Joseph Hale's September 20, 2000, letter to Attorney Silberberg contains language from which it may be inferred that control of litigation is not completely centralized and that individuals from the hospital or regions have input into the handling of litigation: "Your main contacts will be myself, and the MHS Regional Director, Risk & Safety Manager, Linda Ubaldi. Marge Matsuda is the MHS Claims Manager and is also an important contact at Ms. Ubaldi's office."

Barbara VanKoll's November 24, 2003, letter to Attorney Silberberg referred to a "facility Risk Manager" and requested that Silberberg "direct . . . correspondence to me and to Kathy Dean at Dominican Santa Cruz Hospital . . . ."

These letters show that, at least in connection with some hospitals in the CHW system, individuals at a regional or facility level have input into how litigated cases are handled. From this showing, it is possible (but not necessary) to infer that those individuals have some control over the litigation as well.

To determine which of the conflicting inferences to draw from the facts actually presented, we also examine what the record does not contain. In

particular, are there facts within the control of the moving party that (1) could be disclosed without defeating the purpose of protecting confidential information and (2) are conspicuous by their absence? (*Abatti v. Eldridge, supra,* 112 Cal.App.3d at p. 416; see *Oldham v. California Capital Fund, Inc., supra,* 109 Cal.App.4th at p. 434.)

First, the declarations do not contain the general assertion that, once CHW HPL Trust assumes responsibility for paying the costs of defense and any resulting liability associated with a lawsuit against a member of CHW's system, individuals employed by the hospital play no role in deciding how the litigation will be handled. In addition, the declarations do not contain a specific assertion about Bakersfield Memorial Hospital and where the decisionmaking responsibility is located for suits against that facility. This specific assertion would distinguish the Bakersfield facility from the facilities in the Sacramento area where the record allows the inference that some litigation decisions are made on a regional level.

This information is important because Bakersfield Memorial Hospital asserts that Attorney Silberberg knows the claims handling practices of its claim managers, which implies that he has an advantage because he has insight into how the individual or individuals who will be deciding how to handle plaintiffs' action will approach the case. The accuracy of this implication is suspect because the record does not show any actual overlap between decision makers whom Silberberg has dealt with in the past and the decision makers who will handle the present case.

Although Bakersfield Memorial Hospital has not argued that identifying the particular decision makers involved in the present case would have disclosed confidential information and worked to its disadvantage,[10] we will assume that is the case for purposes of argument. In that situation, the moving papers could have included evidence establishing, without identifying individuals, that there was an overlap between the decision makers in this case and the decision makers whom Attorney Silberberg had dealt with in prior cases. No such evidence is present in the record.

Based on the foregoing concerns, we will not infer that (1) no individual employed by Bakersfield Memorial Hospital has any role in making any decision about the defense of plaintiffs' claim or that (2) Attorney Silberberg is familiar with the individuals who will be the decision makers. Accordingly, these factors cannot be used to establish that Attorney Silberberg's prior representations are substantially related to his representation of plaintiffs.

---

[10] The confidentiality of this type of information is eliminated, at least in part, when an individual who represents the defendant and has settlement authority attends a settlement conference.

### 2. *Relationship of claims policies and practices*

Bakersfield Memorial Hospital also argues that Parent Corporation's claims practices help establish the existence of a substantial relationship between Attorney Silberberg's prior representation of Parent Corporation and his current representation of plaintiffs.

In making this assertion, Bakersfield Memorial Hospital is asking this court to infer that Parent Corporation's practices are uniformly applied (or substantially so) throughout the hospital system. Alternatively, Bakersfield Memorial Hospital may be making the more narrow assertion that the practices of Parent Corporation with which Attorney Silberberg is familiar are the practices that are being used in the present case. Under either scenario, Attorney Silberberg's prior experience would be helpful to plaintiffs' case.

In deciding whether to draw these inferences, we examine the evidence in the record to determine if inferences can be drawn that conflict with Bakersfield Memorial Hospital's assertions regarding the similarity of practices.

Joseph Hale's September 20, 2000, letter to Attorney Silberberg contains language from which it may be inferred that litigation practices are not uniform within CHW's system of hospitals. That letter told Attorney Silberberg that, "Since this is the first case assigned to you here in Sacramento, I have included a copy of *our* Defense Counsel Procedures." (Italics added.)

This statement supports an inference that the defense counsel procedures used by the hospitals associated with the Mercy Healthcare Sacramento Region are different from those used by other hospitals within the system and that Joseph Hale was aware of this difference.

Barbara VanKoll's November 24, 2003, letter to Attorney Silberberg indicated it was imperative for him to provide statistical information on the plaintiff and asked that he "please refer to the Plaintiff Biographical/Damages Data sheet in the Defense Counsel Procedures." The information was to be used to "evaluate our financial exposure."

The declarations submitted do not state that the "Defense Counsel Procedures" referenced in the Hale and VanKoll letters are the procedures that will be applied to plaintiffs' case. Thus, we have no direct evidence helpful in determining if the procedures and practices used in the prior matters involving Attorney Silberberg overlap (in whole or in part) with the procedures and practices that will be used in plaintiffs' case. Further, even assuming that the

same "Defense Counsel Procedures" referenced in VanKoll's letter will be used, the record does not show that the information contained in that document is material to the present litigation in a way that gives plaintiffs an advantage. The document may refer only to matters that are obvious or mundane. Indeed, Bakersfield Memorial Hospital has not specifically argued that the documents are material to the present litigation.

Based on what the record contains and does not contain, we are reluctant to make the dual inference that the practices and procedures with which Attorney Silberberg is familiar (1) will be applied in the present case and (2) contain information that could materially advance plaintiffs' position.

### 3. *Relationship of birth injury issues*

Beyond these contentions that Attorney Silberberg obtained knowledge about its litigation "playbook,"[11] Bakersfield Memorial Hospital also contends that plaintiffs' action is substantially related to the prior representations because the prior matters involved claims of negligence in connection with the delivery of an infant and the prior cases concerned allegations of nursing negligence. (Cf. *Farris*, *supra*, 119 Cal.App.4th at p. 684 [prior representation of insurance company as its coverage counsel involved the same legal issues—whether there was coverage under the policy terms—as the current representation of an insured in a bad faith and contract action against the insurance company].)

This contention is not supported with evidence establishing that the training, practices, or procedures relevant to the care given at the facilities sued in the prior cases is the same as or similar to the training, practices, or procedures relevant to the care given by Bakersfield Memorial Hospital. Again, without evidence on this point, any finding by this court that the relationship exists would have to be based on inference. Without evidence to connect the care given at Bakersfield Memorial Hospital to that involved in the prior cases, we are unwilling to infer it exists, particularly because evidence establishing that connection would not have been difficult for Bakersfield Memorial Hospital to present and would not have disclosed confidential information.

In contrast, the moving party insurance company in *Farris* established a connection between the internal policies and procedures that the company applied to the insured's claim and the prior representation provided to the

---

[11] Acquisition of so-called playbook information was discussed by this court in *Farris* and *Jessen*. (See *Farris*, *supra*, 119 Cal.App.4th at pp. 680, 688; *Jessen*, *supra*, 111 Cal.App.4th at pp. 712–713 [identity of decision makers, litigation philosophy, organizational structure and financial impact of pending litigation].)

insurance company by the attorney. Specifically, the insurance company showed that the attorney was "instrumental in formulating those strategies and philosophies," participated in training the company's senior claims personnel in California about how to handle and decide coverage questions, and provided advice the company relied upon to "develop, modify, and interpret [its] practices, policies and procedures related to coverage questions and disputes." (*Farris, supra,* 119 Cal.App.4th at pp. 684–685.) Thus, in *Farris,* the evidence easily resolved the question whether the policies and procedures with which the attorney was familiar were being applied in the situation presented by the insured's lawsuit.

### 4. *Summary*

■ We conclude that Bakersfield Memorial Hospital's motion to disqualify relied too heavily on inferences about facts that were within its control and that could have been disclosed without compromising confidential information. Under the circumstance presented in this appeal, whether the inferences should be drawn raise a question of law. We resolve that question of law by not drawing the inferences necessary to establish that the present case is substantially related to the prior representation of Bakersfield Memorial Hospital's affiliates. In short, Bakersfield Memorial Hospital failed to carry its burden and the motion should have been denied.

### D. *Modified Substantial Relationship Test*

Bakersfield Memorial Hospital's moving papers indicated that Attorney Silberberg's former law firm was retained in approximately 220 cases that involved the defense of CHW employees and hospitals that were members of CHW's system. Bakersfield Memorial Hospital referred to the 220 cases as support for its conclusion that an attorney-client relationship existed between Silberberg and CHW as well as the CHW HPL Trust.

In addition, Bakersfield Memorial Hospital may be arguing that the 220 cases support the presumption that Attorney Silberberg obtained material confidential information through application of the modified substantial relationship test. At best, this argument is made by innuendo, and Bakersfield Memorial Hospital has not attempted to present evidence showing that confidential information from some of the 220 cases that is material to the current litigation "would normally have been imparted to the attorney during his tenure at the old firm." (*Adams, supra,* 86 Cal.App.4th at p. 1340.) Stated otherwise, Bakersfield Memorial Hospital has not attempted to show that Attorney Silberberg was in a position with respect to those cases so that it was reasonably likely that he would have acquired confidential information material to his representation of plaintiffs. (*Jessen, supra,* 111 Cal.App.4th at

p. 710.) For example, the record does not show how many, if any, of the 220 cases mentioned were handled from the law firm's office where Attorney Silberberg worked.

Accordingly, we conclude that the record does not establish Attorney Silberberg had a sufficient connection with the 220 other cases his law firm handled to presume that he acquired confidential information material to the present case. In short, the modified substantial relationship test has not been met with respect to those cases.

## III. *Corporate Affiliates and Identifying the Former Client*

Bakersfield Memorial Hospital is a separate corporate entity that was never represented by Attorney Silberberg. Nonetheless, Bakersfield Memorial Hospital argued in this appeal that it should be treated as the "former client" for purposes of rule 3-310(E) because Attorney Silberberg previously represented its corporate affiliates.

We recognize that the discussions contained in the two published decisions of the Court of Appeal on the question when a corporate affiliate should be treated as a former client are not in complete harmony, but that the rule of law adopted and applied in each case might be reconciled with the other based on the divergent factual situations each case presented. (Compare *Morrison*, *supra*, 69 Cal.App.4th 223 [unity of interest test applied where representations were successive] with *Brooklyn Navy Yard Cogeneration Partners v. Superior Court* (1997) 60 Cal.App.4th 248 [70 Cal.Rptr.2d 419] [alter ego test applied where representations were simultaneous and unrelated].) We further recognize that the question whether the alter ego test, the unity of interest test, or some other test should be applied to the factual situation presented in this case is a matter of dispute between the parties and others. (See generally Steele, *Corporate Affiliate Conflicts: A Reasonable Expectations Test* (2002) 29 W. St. U. L.Rev. 283; Kehr, *Who's the Client* (June 2000) 23 L.A. Law. 33, 36; Wolfram, *Corporate-Family Conflicts* (1999) 2 J. Inst. for Study Legal Ethics 295 [discussing client identity problems in corporate families and describing an "all-affiliates approach" and a "no-affiliates approach"].)

Nevertheless, because we have concluded that moving party did not present sufficient evidence to satisfy the substantial relationship test in this case of successive representations, we need not reach the question regarding which of the foregoing tests should be applied here to determine whether Bakersfield Memorial Hospital should be treated as a former client of Attorney Silberberg.

## DISPOSITION

The order disqualifying counsel is reversed. The superior court on remand shall enter a new order denying Bakersfield Memorial Hospital's motion. Plaintiffs shall recover their costs on appeal.

Vartabedian, Acting P. J., and Cornell, J., concurred.