[No. F050519. Fifth Dist. Oct. 30, 2007.]

MED-TRANS CORPORATION, INC., et al., Plaintiffs and Appellants, v. CITY OF CALIFORNIA CITY, Defendant and Respondent.

**COUNSEL**

Sedgwick, Detert, Moran, & Arnold, Randall A. Miller and Hall R. Marston for Plaintiffs and Appellants.

Lemieux & O'Neill and W. Keith Lemieux for Defendant and Respondent.

**OPINION**

**KANE, J.**—Plaintiff Med-Trans Corporation, Inc. (MTC), appeals from an order disqualifying Thomas Anton (Attorney Anton) from representing it in this lawsuit against defendant City of California City (City). City sought

disqualification after MTC made significant new allegations in connection with a proposed fifth amended complaint. According to those allegations, City failed to disclose the fact that it would be difficult to obtain an ambulance service permit in Kern County, which fact was well known to City as a result of a prior meeting between Attorney Anton and a City official. City believed that said prior meeting constituted a preliminary consultation between Attorney Anton and a prospective client (City), and the trial court apparently agreed. Finding a substantial relationship existed between the subject matter of the prior meeting and the present lawsuit, the trial court granted the disqualification motion. In this appeal, MTC contends the trial court erred because there was no evidence of an attorney-client relationship between Attorney Anton and City, and in any event no confidential information was disclosed. We agree and thus reverse the trial court's order disqualifying Attorney Anton and the law office of Thomas Anton & Associates.

## FACTS AND PROCEEDINGS

According to MTC's original complaint, on January 7, 2002, MTC entered into a contract with City in which MTC agreed to provide air ambulance services for a specified fee. A basic purpose of the contract was to facilitate continuous helicopter ambulance service for patients within the general region of City. Prior to entering into the agreement, false representations were allegedly made to MTC by City's fire chief, Michael Antonucci (Chief Antonucci), regarding the estimated number of times that air ambulance services would be utilized per year (call volumes). MTC allegedly relied on these representations as to call volumes when it decided to enter into the contract with City. The complaint further alleged that City breached the contract by, among other things, failing to timely provide necessary licenses and permits required to operate the air ambulance services in Kern County[1] and a failure to provide adequate infrastructure to dispatch calls. Under these facts, the original complaint included causes of action for fraud and breach of contract. Later, a fourth amended complaint provided greater specificity regarding the misrepresentations as to call volumes that were allegedly made by Chief Antonucci.

---

[1] It is unclear what time period was contemplated by the parties for acquiring the necessary permit. We note that according to Tommy Hyden, who was senior vice-president for MTC at the time, City applied for the permit on behalf of MTC in early January of 2002, the permit was granted in March of 2002 and it was issued on April 5, 2002.

On September 14, 2005, during the course of discovery in this case, the deposition of Chief Antonucci was taken by Attorney Anton on behalf of MTC. At the deposition, Attorney Anton inquired at length about a November 2001 meeting that Attorney Anton had with Chief Antonucci. At the time of the earlier meeting with Chief Antonucci, Attorney Anton was representing a third party, Golden Empire Medical Transport (Golden Empire), in a federal lawsuit against Kern County for antitrust violations based on Kern County's alleged failure to issue ambulance service permits to qualified applicants.[2] In response to Attorney Anton's deposition questions, Chief Antonucci stated his recollection that the November 2001 meeting included, among other things, discussions relating to the federal lawsuit against Kern County and City's potential joinder therein.[3]

On February 10, 2006, MTC sought leave to file a fifth amended complaint. The purpose of the amendment was to add a new cause of action entitled "Fraud in the Inducement—Intentional Misrepresentation re: Permit." The proposed new cause of action was based, in part, on the premise that in a prior meeting with MTC's representative, Attorney Anton, City had been informed of the difficulty of obtaining ambulance permits in Kern County. Specifically, the fifth amended complaint alleged, "Neither City nor [Chief] Antonucci relayed to MTC, during any point of the contract negotiations . . . that City and its representative, [Chief] Antonucci[,] before November 2001, met with representatives of the [Golden Empire] in the Federal Court case and discussed the pitfalls and hazards the City would face from the County of Kern . . . if it pursued a permit to operate any ambulance or provide paramedic services to its citizens."

After learning of the proposed amendment, City promptly interposed its motion to disqualify Attorney Anton. The disqualification motion was supported by the declaration of Chief Antonucci. The declaration explained that in November of 2001, Chief Antonucci was contacted by Attorney Anton regarding a federal lawsuit that Attorney Anton had brought on behalf of his then client, Golden Empire, against Kern County. The federal lawsuit had alleged, among other things, that Kern County was involved in anticompetitive practices by wrongly denying ambulance permits to otherwise qualified companies. Chief Antonucci also received a telephone call in November of 2001 from a representative of Golden Empire, Attorney Ritchie, informing him that Attorney Anton was very interested in meeting with him. A lunch

---

[2] A third person by the name of Rocky Ritchie (Attorney Ritchie) was also at the meeting. Attorney Ritchie was apparently a second attorney representing Golden Empire and also one of its corporate officers.

[3] Apparently, no objection was made at the deposition that Attorney Anton's questions relating to what was said at the prior meeting violated attorney-client privilege.

meeting was arranged at which Chief Antonucci met for approximately one and one-half hours with Attorneys Anton and Ritchie.

According to Chief Antonucci's declaration, "[d]uring the course of the meeting, it became clear to me that [Attorney] Anton was interested in soliciting the City's involvement in his federal lawsuit." Since Attorney Anton "discussed the suit with [him] and why the City should become involved as a plaintiff," it seemed clear to Chief Antonucci that "[Attorney] Anton was offering to represent [California] City." Chief Antonucci then noted the conversation shifted to a discussion of City's plans with respect to MTC, including Attorney Anton's giving advice, which is described as follows: "During the course of the meeting with [Attorney] Anton, I discussed with him City's plans regarding [MTC] and the fact that we would soon be seeking a permit. [Attorney] Anton offered a legal opinion regarding the legality of [Kern] County's conduct in relation to Golden Empire. [Attorney] Anton also offered his legal opinion regarding [Kern] County's procedures and what he believed would be a likely attempt to deny City a permit. Besides this legal opinion, [Attorney] Anton also offered me legal advice as to the strategy City should take in applying for a permit in conjunction with [MTC's] proposal. [¶] Following my conversation with [Attorney] Anton, I reported the substance of this conversation to appropriate City officers and the City attorney. A decision was made at that time not to join in the federal lawsuit." Chief Antonucci summarized the meeting in the following terms: "Throughout my contact with [Attorney] Anton, I understood that I was meeting with him in his professional capacity as an attorney offering legal advice, opinions and potential representation."

In light of the circumstances of the meeting, as described above, City's motion for disqualification argued that a preliminary consultation between an attorney and a prospective client had transpired, giving rise to duties of loyalty and confidentiality to City on the part of Attorney Anton with respect to the subject matter communicated at said meeting. When Attorney Anton later exploited the meeting and the matters discussed therein as a basis for potential liability in the instant lawsuit against City, it allegedly resulted in (or revealed) a conflict of interest warranting his disqualification.

MTC's opposition to the motion took a surprising turn. Contrary to the allegations in the proposed fifth amended complaint, MTC claimed in its opposition that the date of the meeting between Attorney Anton and Chief Antonucci was not November of 2001 after all, but January 31, 2002, several weeks after the contract with MTC was already approved by City and executed. The later meeting date was allegedly supported by attorney billing

statements. According to MTC's opposition, the fact that the meeting was actually in late January of 2002 proved that no confidential information could have been exchanged, since the agreement with MTC was already a matter of public record. MTC also stressed that there had been general publicity about Kern County's policies regarding ambulance permits because of several newspaper articles.

Moreover, the declarations of Attorneys Anton and Ritchie in opposition to the motion stated that Attorney Anton was not seeking to be hired by City or to have City join his federal lawsuit, and that no advice was offered or confidential information disclosed. Rather, according to Attorney Anton, he was merely attempting to "obtain information . . . for use in the [Golden Empire] litigation." Furthermore, any opinions offered by Attorney Anton at the meeting were, according to Attorney Anton, "regarding [Golden Empire] and [Kern] County, particularly how [Kern] County was in violation of a host of laws." He claimed that "[n]othing in [his] opinions related to the subject matter of the proposed Fifth Amended Complaint . . . ."

In its reply, City emphasized that Attorney Anton, throughout his questioning of Chief Antonucci at a 2004 deposition in this case, asked numerous questions about the November 2001 meeting and, from the nature of the questions asked, obviously believed at that time (several months prior to City's disqualification motion) that the November date was correct. Also, Attorney Anton was convinced the meeting was in November of 2001 when he submitted his proposed fifth amended complaint in February of 2006. City argued this self-serving change of position significantly impacted on Attorney Anton's credibility: "When it worked to his advantage, [Attorney] Anton relied on a November 2001 date to support a Fifth Amended Complaint based on fraudulent inducement against City. Now that he faces possible disqualification, [Attorney] Anton has urged a January date." Additionally, City's reply emphasized that prior to the face-to-face meeting, Chief Antonucci had " 'various phone conversations' " in November of 2001 with Attorneys Anton and Ritchie regarding the federal lawsuit. Thus, even assuming the face-to-face meeting occurred at a later date, the earlier phone calls would (according to City) warrant a finding of an attorney-client relationship in November of 2001.

The motion was heard on March 28, 2006. The trial court did not find the date of the meeting to be significant, and instead focused on the relationship between the prior conversations and the present lawsuit.[4] The court observed, "[t]here's an awful lot here that suggests there is a substantial relationship between the conversations between [Attorney] Anton and [Chief] Antonucci and the claims that are now being made by [MTC] against the City . . . with

---

[4] In its appeal, MTC does not raise the date of the meeting as an issue.

regard to [Chief] Antonucci's representations and his presumed knowledge that those representations were not true." In sum, the court found there was sufficient evidence that Attorney Anton (with help from Attorney Ritchie) had solicited the participation of City in the federal lawsuit against Kern County, which solicitation gave rise to discussions involving the very subject of the instant case—namely, the difficulty of securing ambulance permits from Kern County. In view of the substantial relationship between the subject matter of the prior conversations and the instant litigation, the court concluded that disqualification was necessary. Accordingly, the motion was granted. MTC's timely appeal followed.

## DISCUSSION

### I. *Standard of Review*

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil*).)

### II. *Disqualification Principles*

■ A court's authority to disqualify an attorney derives from its inherent power to control in furtherance of justice the conduct of its ministerial officers and the integrity of the proceedings before it. (Code Civ. Proc., § 128, subd. (a)(5); *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 562 [20 Cal.Rptr.2d 132] (*Zimmerman*).)

■ Where, as here, a motion for disqualification is based on an asserted breach of confidentiality or conflict of interest, the trial court must cautiously balance the competing interests. " 'The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and

any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest. [Citations.]' " (*Zimmerman, supra,* 16 Cal.App.4th at pp. 562–563.) "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process. [Citations.]" (*SpeeDee Oil, supra,* 20 Cal.4th at pp. 1145–1146.) Such important ethical considerations include the attorney's duties of confidentiality and loyalty. (*Id.* at p. 1146.)

■ It is well established that an attorney may not " 'do anything which will injuriously affect his former client in any [matter] in which he formerly represented him,' " nor " 'at any time use against his former client knowledge or information acquired by virtue of the previous relationship.' " (*People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155 [172 Cal.Rptr. 478, 624 P.2d 1206]; see *Zimmerman, supra,* 16 Cal.App.4th at p. 562.) "The purpose of the rule is to protect both confidential communications and the enduring confidential relationship between attorney and client." (*Zimmerman, supra,* at p. 562.)

In order to protect the confidential nature of the attorney-client relationship from conflicts of interest, the State Bar Rules of Professional Conduct, rule 3-310(E) (rule 3-310(E)), provides that an attorney may not, "without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

■ Courts have applied rule 3-310(E) to a variety of situations, and different tests have been developed for determining whether disqualification is appropriate. The present case involves alleged successive representation of clients whose interests are claimed to be adverse. "In successive representation cases, a party may obtain the disqualification of an attorney by establishing that the targeted attorney (1) has actual knowledge of material confidential information or (2) is *presumed* to have acquired confidential information because of the relationship between the prior representation and the current representation." (*Faughn v. Perez* (2006) 145 Cal.App.4th 592, 603 [51 Cal.Rptr.3d 692], italics added.)

Under the substantial relationship test, "[w]here an attorney successively represents clients with adverse interests, and where the subjects of the two

representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1146.) The rationale for this rule has been explained as follows: "Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality.* Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations. [¶] The 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm. [Citations.]" (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283–284 [36 Cal.Rptr.2d 537, 885 P.2d 950].)[5]

A modified version of the substantial relationship test has been applied in situations where the former attorney-client relationship was peripheral or attenuated, rather than direct and personal. (*Faughn v. Perez, supra,* 145 Cal.App.4th at p. 603; *Ochoa v. Fordel, Inc.* (2007) 146 Cal.App.4th 898, 907–908 [53 Cal.Rptr.3d 277].) Generally, these situations arise "when an attorney switches law firms and the attorney's new firm becomes involved in litigation against a client of the attorney's former firm." (*Faughn v. Perez, supra,* at p. 603, fn. 7.) Under the modified substantial relationship test, the presumption will not be applied in the absence of an adequate showing that

---

[5] In a recent formulation of the substantial relationship test where the relationship was *direct,* the Supreme Court put it in these terms: "To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation. [Citation.]" (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847 [43 Cal.Rptr.3d 771, 135 P.3d 20] (*City and County*).) "If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information. [Citation.] Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel. [Citations.]" (*Ibid.*)

"the attorney was in a position vis-a-vis the client to likely have acquired confidential information material to the current representation." (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 710 [3 Cal.Rptr.3d 877].) The court's task in such cases is to determine whether "confidential information material to the current representation would normally have been imparted to the attorney during his tenure at the old firm." (*Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1340 [104 Cal.Rptr.2d 116].)[6]

Here, there is no question that Attorney Anton's involvement in the prior meeting and conversations with Chief Antonucci was both direct and personal. He personally engaged in discussions relating to the federal lawsuit and, in the words of the proposed fifth amended complaint, to the "pitfalls and hazards the City would face from the County of Kern or other ambulance providers if it pursued a permit to operate any ambulance or provide paramedic services to its citizens." There is also no question that the legal and factual issues are substantially related, for the reasons noted by the trial court, since the subject matter of the prior meeting and the current case concern to a significant extent the legal and other issues entailed in seeking such licenses from Kern County decision makers *and* City's awareness thereof.

However, before we can determine whether the trial court correctly applied the substantial relationship test in the present case, further analysis is necessary because of the fact that the prior meeting was apparently in the nature of a preliminary consultation which did not result in professional employment of the attorney. We now turn to consideration of the legal issues that this fact raises.

III.   *When Initial Consultation Is Deemed Representation for Purposes of Conflict of Interest Analysis*

■   In *SpeeDee Oil, supra,* 20 Cal.4th at pages 1147–1148, the Supreme Court addressed the question of when an attorney-client relationship "has reached a point where the attorney can be subject to disqualification for a conflict of interest." The court began by explaining that fiduciary duties of the

---

[6] As recently summarized by the Supreme Court: "When the attorney's contact with the prior client was *not direct,* then the court examines both the attorney's relationship to the prior client and the relationship between the prior and the present representation. If the subjects of the prior representation are such as to 'make it likely the attorney acquired confidential information' that is relevant and material to the present representation, then the two representations are substantially related. [Citations.] When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client. [Citations.]" (*City and County, supra,* 38 Cal.4th at p. 847, italics added.)

lawyer to the client exist even in the earliest stages of the relationship: "as noted in *Beery* v. *State Bar* (1987) 43 Cal.3d 802 [239 Cal.Rptr. 121, 739 P.2d 1289]: ' "The fiduciary relationship existing between lawyer and client extends to preliminary consultations by a prospective client with a view to retention of the lawyer, although actual employment does not result." [Citation.] "When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie*." [Citation.] "The absence of an agreement with respect to the fee to be charged does not prevent the relationship from arising." [Citation.]' [Citations.]" (*SpeeDee Oil, supra*, at pp. 1147–1148.)

The Supreme Court emphasized the "primary concern" is not on whether the lawyer is ultimately employed, but "whether and to what extent the attorney acquired confidential information. [Citation.]" (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1148.) "That question is not necessarily answered by the amount of time involved. 'Even the briefest conversation between a lawyer and a client can result in the disclosure of confidences.' [Citation.]" (*Ibid.*) The court then stated the following rule to identify the point at which representation begins to exist for purposes of a conflict of interest analysis: "Consequently, a formal retainer agreement is not required before attorneys acquire fiduciary obligations of loyalty and confidentiality, which begin when attorney-client discussions proceed beyond initial or peripheral contacts. *An attorney represents a client—for purposes of a conflict of interest analysis—when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result.* [Citations.]" (*Ibid.*, italics added.)

*SpeeDee Oil* also approved of the approach used by the Court of Appeal in *Zimmerman*, a preliminary consultation case, because the court "properly focused" on whether the party seeking disqualification "established, directly or by reasonable inference," that in the prior contact the attorney "acquired confidences related to the [current litigation]." (*SpeeDee Oil, supra*, 20 Cal.4th at pp. 1148–1149.) We note *Zimmerman* upheld the trial court's denial of a disqualification motion in that case since there was a failure to demonstrate that a preliminary consultation with an attorney resulted in disclosure of confidential information or that it would be reasonable to infer such disclosure. (*Zimmerman, supra*, 16 Cal.App.4th at p. 565.)[7]

---

[7] *Zimmerman* concerned an appellant's initial telephone contact with an attorney, Kenneth Gack, to discuss potential representation in postdissolution proceedings. Sometime after the conversation, the appellant's ex-husband's attorney became a partner in Gack's firm. In her 1992 motion to disqualify her ex-husband's attorney, the appellant stated she had a 20-minute telephone consultation with Gack in November 1989. The appellant said she had outlined her case to Gack and he had offered his initial impressions and opinions before recommending that

We glean from *SpeeDee Oil* that for purposes of a conflict of interest analysis, where the former contact with the attorney was a preliminary conversation that did not result in professional employment or services, the party seeking disqualification must show, directly or by reasonable inference, that the attorney acquired confidential information in the conversation. (See *SpeeDee Oil, supra,* 20 Cal.4th at pp. 1148–1149.) In other words, in such cases the presumption that confidential information passed will not apply.[8]

In the present case, the trial court focused exclusively on the relationship between the issues that were the subject of the prior meeting and the current litigation. It did not address the question of whether Attorney Anton acquired confidential information in the course of the prior meeting. We resolve that question at this time because there is only one reasonable conclusion that may be drawn from the record before us.

We conclude as a matter of law that City failed to establish that confidential information was imparted in the prior meeting. First, according to Chief Antonucci's declaration, aside from a discussion of the federal lawsuit against Kern County relating to its alleged improper permit practices, the only relevant information shared at the meeting was City's plan to hire MTC and apply for an ambulance permit. Whether or not this fact was generally known

---

she find an attorney with family law expertise. Gack took no notes of the conversation and had no recollection thereof. The disqualification motion was denied by the trial court and the woman appealed. (*Zimmerman, supra,* 16 Cal.App.4th at pp. 560–561.)

In affirming the order, *Zimmerman* noted there is "no disputing the substantiality of the relationship between the former and current aspects of this litigation." (*Zimmerman, supra,* 16 Cal.App.4th at p. 563.) However, the Court of Appeal turned its attention to whether "the nature of the former representation or relationship of the attorney to his former client [was] such that confidential information material to the current dispute 'would normally have been imparted to the attorney.' " (*Id.* at p. 564.) After considering several factors, *Zimmerman* upheld as supported by substantial evidence the trial court's finding that the appellant failed to establish a relationship with Gack " 'from which it would be reasonable to infer' " disclosure of confidential information. (*Id.* at p. 565.)

Among factors considered by *Zimmerman* in reaching this conclusion were the following: (1) Gack had not represented the appellant other than in the most preliminary, insubstantial and peripheral manner; (2) Gack performed no work for her and in fact referred her to another attorney; (3) although Gack may have offered some initial impressions, he was not called upon to formulate a legal strategy; (4) no actual confidential disclosures were claimed by the appellant; and (5) it did not appear "from the nature of [the] appellant's relationship with Gack, brief and insubstantial as it was, that confidential information material to the current dispute would normally have been imparted to the attorney." (*Zimmerman, supra,* 16 Cal.App.4th at pp. 564–565.)

[8] This rule is consistent with the principle that the party seeking disqualification must establish that it was represented by the attorney in a manner giving rise to an attorney-client relationship. (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 729 [135 Cal.Rptr.2d 415].)

at the time of the meeting, on the record before us there is no reason to infer that City's objective to hire an ambulance company and seek a permit would be considered a confidential matter. Second, the circumstances of the meeting confirm a lack of confidentiality. This was *not* a case of a person who, in seeking to hire an attorney, shared confidences in the course of a consultation. Quite to the contrary, it was Attorney Anton who sought to meet with Chief Antonucci, and there is nothing in the record to suggest that City ever pursued Attorney Anton's representation. Further, the ensuing discussion included the presence of a third party, Attorney Ritchie, whose interest (on behalf of Golden Empire) was obviously limited to the federal lawsuit. (See Evid. Code, § 952.) Although the purpose of the meeting was, according to Chief Antonucci, to solicit City's involvement in the federal lawsuit, that solicitation was plainly unsuccessful. There is no evidence that City (or Chief Antonucci) ever considered Attorney Anton to be City's lawyer or potential lawyer and, most importantly, it has not been demonstrated that any confidential matters were disclosed. To the extent Attorney Anton offered his opinions about City's ambulance permit application, such unsolicited advice in the context of this limited meeting was obviously no more than his "initial impressions." (See *Zimmerman, supra,* 16 Cal.App.4th at p. 564.)

██  Because City failed to establish that confidential information was imparted to Attorney Anton in the prior meeting with Chief Antonucci, we conclude that this initial discussion never went beyond the preliminary stages and no actual representation occurred for purposes of showing a conflict of interest. (See *SpeeDee Oil, supra,* 20 Cal.4th at p. 1148.)[9] Consequently, the trial court erred in granting the motion to disqualify Attorney Anton.[10]

---

[9] At oral argument, City emphasized an isolated quotation in *SpeeDee Oil* that " ' "[w]hen a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established *prima facie.*" ' " (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1148.) That quotation clearly has no bearing here, where the attorney solicited the prospective client (not the other way around) and, pursuant thereto, engaged in a conversation that has not been shown to have involved the disclosure of any confidential information by the prospective client. And even if the attorney offered gratuitous advice during the aforesaid solicitation, we believe the *SpeeDee Oil* standard would still apply—that is, for conflict of interest purposes, a party seeking disqualification based on a mere preliminary consultation must show that confidential information was conveyed by the prospective client. (*SpeeDee Oil, supra,* at pp. 1148–1149.)

[10] We note in passing that the content of discussions at the prior meeting was explored in Chief Antonucci's deposition in this case, apparently without objection. Based on this fact and the presence of a third party at the prior meeting, MTC argues that *even if* confidential information was shared, any potential claim of attorney-client privilege regarding the meeting was waived, making disqualification an ineffective and unnecessary remedy. That is, even if disqualification were ordered, MTC would be free to give new counsel the same information, leaving City in the same situation. (See *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 591 [283 Cal.Rptr. 732]; *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831, 844 [123 Cal.Rptr.2d 202].) We deem it unnecessary to address this argument.

## DISPOSITION

The trial court's order is reversed. The matter is remanded with direction that the court enter a new order denying City's motion to disqualify Attorney Anton. MTC is entitled to its costs on appeal.

Harris, Acting P. J., and Hill, J., concurred.

On November 19, 2007, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied January 16, 2008, S158903.