[No. F047096. Fifth Dist. Dec. 21, 2005.]

RALSTON M. POUND III et al., Plaintiffs, Cross-defendants and Respondents, v.
DEMERA DEMERA CAMERON, Defendant, Cross-complainant and Appellant;
HOWARD DEMERA et al., Defendants and Appellants.

**COUNSEL**

Michael J. F. Smith for Defendant, Cross-complainant and Appellant.

Betts & Wright and James B. Betts for Defendants and Appellants.

Law Offices of Wagner & Jones, Andrew B. Jones; Law Offices of John K. Ormond and John K. Ormond for Plaintiffs, Cross-defendants and Respondents.

Opinion

**CORNELL, Acting P. J.**—This case presents an issue of first impression involving attorney disqualification in a successive representation setting. The issue is whether the firm representing one party must be disqualified when it associates as counsel an attorney who previously obtained confidential information from the opposing party, even in the absence of any evidence that confidential information was shared between the firm and the associated counsel.

Defendants Howard DeMera (Howard), Mark Cameron (Mark), and DeMera DeMera Cameron (DDC) (collectively defendants)[1] appeal from an order denying in part their motion to disqualify counsel for plaintiffs Ralston M. Pound III, Karen M. Bradley, and John A. Renna (collectively plaintiffs).

At the time of the motion, plaintiffs were represented by Andrew B. Jones (Jones) and Peter S. Bradley (Bradley). Bradley recently had been associated in the case. The trial court concluded Bradley must be disqualified because he was provided with confidential information when he consulted with DDC's counsel three years before being contacted by Jones. The trial court concluded it was not necessary to disqualify Jones, however, because Bradley did not provide any confidential information to Jones. Defendants appeal from the order denying the motion to disqualify Jones.

We conclude that once the trial court determined Bradley received confidential information from DDC, the disqualification of Jones also was required. We, therefore, will vacate the portion of the trial court's order that denies the motion to disqualify Jones and remand with instructions to issue a new order granting the motion.

## FACTUAL AND PROCEDURAL SUMMARY

This action arose out of plaintiffs' employment with DDC, an accountancy corporation. Plaintiffs were shareholders in DDC and subject to various agreements related to their employment, including covenants not to compete, termination bonuses, and the right to purchase shares of the corporation upon termination. Howard and Mark were the controlling shareholders of DDC.

Plaintiffs decided to terminate their employment with DDC and form their own firm. Plaintiffs, naturally, intended to retain some of the accounts they had established at DDC and became concerned with the potential effect of the

---

[1] We refer to Howard DeMera as Howard and Mark Cameron as Mark, not out of disrespect, but to avoid confusion with the defendant corporation DeMera DeMera Cameron.

various employment agreements. They filed a declaratory relief action against DDC seeking to resolve these concerns before they left DDC. The first amended complaint added derivative causes of action for breach of fiduciary duty, fraud, and other theories against Howard and Mark. DDC filed a cross-complaint seeking a declaration of the parties' rights and duties under the various agreements and alleging plaintiffs breached their employment contracts.

The contentious nature of this corporate divorce sets the stage for the dispute before us. In September 2001, Howard and Mark were seeking personal counsel, necessitated by plaintiffs' amended complaint that named them as individual defendants for the first time.

Michael J. F. Smith (Smith), counsel for DDC, agreed to assist in the search. He interviewed several attorneys, including Bradley. On September 14, 2001, he met with Bradley for approximately one hour. Smith stated in a declaration that during his interview with Bradley he discussed the case in specific terms, including issues, personalities, vulnerabilities, and other topics properly described as attorney work product. (Code Civ. Proc., § 2018.030.) Howard and Mark eventually retained James Betts (Betts).

Jones represented plaintiffs from the inception of the action. His declaration states that in September 2004 (three years after Bradley interviewed with Smith) he consulted with Bradley because of Bradley's experience in corporate matters. They briefly discussed the case and Bradley offered some observations about the legality of Howard and Mark's actions. Approximately one week later Jones approached Bradley about associating as counsel in the case. Bradley told Jones that years earlier he had met with Smith about a case in which Jones was the opposing attorney. Bradley did not know if his meeting with Smith involved this case, could not recall Smith providing any specific information, and recalled the primary topic was his (Bradley's) qualifications.

Jones and Bradley met with plaintiffs "a few times." Bradley did not tell Jones of any facts or legal issues learned from Smith or any other source. The factual and legal context of the discussions was based on information provided by Jones.

Bradley filed a declaration confirming a meeting with Smith, but denying the ability to confirm they discussed this case. Bradley recalled the meeting involved a corporation that had been sued, as had the majority shareholders. Although the parties probably were identified, the discussions were superficial. Smith provided a brief overview of the case's posture. The only facts Bradley could remember with certainty were that the case involved corporate

law issues and Jones was the adverse attorney. Bradley believes no facts were discussed beyond what one could learn from the pleadings. The primary purpose of the meeting was to discuss Bradley's expertise and experience.

Bradley recounted his meeting with Jones. Jones did not tell Bradley any information that sounded familiar to Bradley. Bradley described the covenant not to compete in the case as a novelty, one with which he was not familiar. The only thing Bradley told Jones about his meeting with Smith was that the case involved corporate law issues and Jones was the adverse attorney.

Smith and Betts learned of Bradley's association in the case at a court conference. DDC immediately moved to disqualify both Bradley and Jones. Howard and Mark joined in the motion. The trial court disqualified Bradley, but denied the motion as to Jones. Defendants appeal the denial of the motion to disqualify Jones.

## DISCUSSION

Although there are many headings and subparts, defendants' only argument is that the trial court abused its discretion in denying the motion because Smith confided privileged information to Bradley and, since Bradley consulted with Jones, the possibility exists that Bradley, either intentionally or unintentionally, disclosed privileged information to Jones. Jones, of course, denies receiving any such information from Bradley. Defendants have no proof to support their argument but suggest the mere possibility is sufficient to disqualify Jones.

■ "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144 [86 Cal.Rptr.2d 816, 980 P.2d 371].)

■ "Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have

recognized that the chief fiduciary value jeopardized is that of client *confidentiality*. Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations. [¶] The 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm. [Citations.]" (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283–284 [36 Cal.Rptr.2d 537, 885 P.2d 950].)

This case involves successive representation. The trial court determined Bradley entered into an attorney-client relationship with Howard and Mark when he met with Smith, who was acting as the agent of Howard and Mark, and Smith provided Bradley with confidential information. These findings are supported by substantial evidence.

When Bradley associated as counsel with Jones to represent plaintiffs, he entered into representation adverse to his former clients, Howard and Mark. *Flatt* teaches, therefore, that if the two actions are substantially related, disqualification is mandatory. A substantial relationship existed in this case because Bradley switched sides in the same action, the "most egregious conflict of interest." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at p. 1147.) The trial court properly disqualified Bradley—indeed the trial court had no choice but to disqualify Bradley—once it concluded Bradley obtained confidential information from Smith.

The question before us is whether Jones's disqualification necessarily must follow. We do not find the same conceptual difficulties as the trial court. We view this case as essentially identical to those cases involving attorneys changing law firms, from one side (plaintiffs) to the other (defendants), during the pendency of a case.

*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109 [14 Cal.Rptr.2d 184] is directly on point. The defendant/cross-complainant in

the underlying judicial foreclosure action initially was represented by Hoge, Fenton, Jones & Appel (Hoge). Attorney Brock was one of the attorneys at the Hoge firm who was actively involved in the litigation. Plaintiff borrower/landowner was represented by Bartko, Welsh, Tarrant & Miller (Bartko). The Hoge firm eventually ceased representing defendant for reasons unrelated to the issues of the case. Sometime later, the Bartko firm hired Brock and constructed an "ethical wall," thereby isolating him from the case. Defendant refused to waive the conflict. The appellate court affirmed the trial court's order disqualifying the Bartko firm. "[W]e believe the rule to be quite clear cut in California: where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law. [Citations.]" (*Id.* at p. 117.)

In reaching its conclusion, the appellate court rejected the use of an ethical wall to isolate the new hire. "[T]he ethical wall concept has not found judicial acceptance in California on our facts: a nongovernmental attorney armed with confidential information who switches sides during the pendency of litigation. Certainly the *Dill* [*v. Superior Court* (1984) 158 Cal.App.3d 301, 306 [205 Cal.Rptr. 671]] court did not endorse the concept. Instead it concluded: 'the law firm representing real parties *must* also be disqualified.' [Citation.] In the *Dill* court's view there simply was no gray area; nor do we see any: the entire firm must be vicariously disqualified even if Brock has been ethically screened from day one." (*Henriksen v. Great American Savings & Loan, supra,* 11 Cal.App.4th at pp. 115–116, fn. omitted.)

We need not concern ourselves with ethical wall considerations. There was no ethical wall attempted in this case. Indeed, the very purpose Bradley was hired by plaintiffs was to assist in the trial of the case.

The only possible distinction is that Bradley was not a member or associate of either Smith's firm or Jones's firm. He was an independent attorney contacted by adverse parties seeking representation, and he established an attorney-client relationship with each party.

■ In our view there is no logical or substantive manner to distinguish the two situations. In each situation it is the attorney's duties of loyalty and confidentiality to his client that are implicated. "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process. [Citation.] The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. [Citation.] The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship. [Citation.]"

*(People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1146–1147.)

■ State Bar Rules of Professional Conduct, rule 3-310 is designed to protect a client's confidences. This rule prohibits attorneys from accepting employment adverse to a client or former client if by reason of the representation the attorney obtained confidential information material to the employment, unless the former client provides an informed written consent. (Rules Prof. Conduct, rule 3-310(E).) "The purpose of the rule is to protect the confidential relationship which exists between attorney and client, a relationship which continues after the formal relationship ends. [Citation.] The fiduciary nature of that relationship requires the application of strict standards. [Citation.]" *(Henriksen v. Great American Savings & Loan, supra,* 11 Cal.App.4th at p. 113.)

■ Disqualification is required to protect the client's confidences. "Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation. [Citation.] For the same reason, a presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm. [Citation.]" *(People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at p. 1146.)

*SpeeDee Oil* establishes that the need to maintain client confidences requires disqualification of a firm when one of the attorneys in the firm has confidential information of the adverse party. The need to maintain client confidences, as well as our obligation to maintain public confidence in the legal profession and the judiciary, would be defeated if we permitted Jones's continued representation of plaintiffs after his having hired Bradley to assist in a case where Bradley previously represented defendants and, in the course of this representation, obtained confidential information. The distinction between hiring Bradley as an associate or partner, on the one hand, and associating him as counsel, on the other hand, does not change the need to protect defendants' confidences. The only effective method to protect defendants' confidences from the possibility of inadvertent disclosure is also to disqualify Jones.

If disqualification of the firm is required, even if the firm erects an ethical wall around the attorney who possesses the opponent's confidences, it is impossible to conceive a justification for not disqualifying Jones when he consulted with Bradley, an attorney who obtained the opponent's confidences,

even if Bradley never associated into the case. The potential for disclosure of confidential information is much greater in the case before us than in the case before the *Henriksen* court.

Jones argues he need not be disqualified because the trial court erroneously concluded that Bradley obtained confidential information from Smith. Jones asserts Smith's declaration establishes that the information discussed in the meeting between Bradley and Smith is properly categorized as Smith's attorney work product. Jones argues Smith waived any privilege he may have had by disclosing this information to Bradley and, since Smith represented DDC, any privilege there may have been belonged to the corporation, not Howard and Mark.

We reject these arguments for a variety of reasons. First, *SpeeDee Oil* establishes that an attorney's work product is confidential information and is not waived when discussed with a consultant. In *SpeeDee Oil*, plaintiff was represented by a sole practitioner. The attorney decided to associate a law firm to assist in the case. He associated Shapiro, Rosenfeld & Close (the Shapiro firm) into the case. At the same time, defense counsel sought a consultation with Attorney Eliot G. Disner, who was "of counsel" to the Shapiro firm. Defense counsel and Disner discussed " 'the background of the case, [defendant's] theories in the case, [defendant's] discovery strategy and an analysis of the procedural and substantive issues which had arisen to date and [were] likely to arise in the future, the state of the case, experts, and consultants, and specific factual issues.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at p. 1141.)

Neither plaintiff's counsel nor defendant's counsel knew they were consulting with the same firm. Nor did Disner and the Shapiro firm learn of the other's consultation until after the fact. When defendant discovered the association, it filed a motion to disqualify the Shapiro firm. Disner and the Shapiro firm explained that Disner was of counsel to the firm, did not share in firm income or liabilities, and the Shapiro firm and Disner never discussed the case.

The Supreme Court held that Disner received material confidential information that included attorney work product. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at p. 1152.)[2] In this case, Smith's declaration establishes that Smith provided Bradley his work product. *SpeeDee Oil* establishes that this information properly was treated by the trial court as confidential information.

---

[2] The Supreme Court also held that the Shapiro firm must be disqualified. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1155–1156.)

Second, Jones does not cite any authority to support his waiver claim. We note the Supreme Court did not find any waiver of the work product privilege in *SpeeDee Oil*. We also located two cases that hold otherwise. *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 214 [91 Cal.Rptr.2d 716, 990 P.2d 591] recognized the attorney work product privilege may be waived, but held it is not waived when information is transmitted from one attorney to another attorney who represents the same client. *Raytheon Co. v. Superior Court* (1989) 208 Cal.App.3d 683, 689 [256 Cal.Rptr. 425] recognized that attorney work product privilege is waived only when disclosure is wholly inconsistent with the attorney's intent to safeguard his work product and trial preparation.

Here, Smith was acting as Howard and Mark's agent when he contacted Bradley. While the work product Smith divulged to Bradley may have applied to his work for DDC, it is clear Smith had a confidential relationship with Howard and Mark. Howard and Mark, as the corporation's majority shareholders and officers, retained Smith to represent the corporation when plaintiffs filed suit. For over one year Smith was the primary attorney with whom Howard and Mark consulted about this litigation because they were not added as individual defendants until plaintiffs filed their amended complaint. Even after the amended complaint was filed, Howard and Mark were the majority shareholders and officers of the corporation with whom Smith would consult about the corporation's representation. In many respects the interests of DDC, Howard, and Mark were identical. Therefore, even if Smith's work product was prepared in his capacity as the corporation's attorney, it necessarily included confidential information consistent with Howard and Mark's interests, and probably contained confidential information Smith obtained from Howard and Mark.

Also missing is any hint that Smith acted inconsistent with an intent to safeguard his work product and trial preparation. We do not agree, as Jones suggests, that an attorney must obtain a written confidentiality agreement from another attorney or consultant before disclosing any attorney work product during the employment process. Bradley has a duty to maintain the confidences of his clients, including Howard and Mark, even in the absence of a confidentiality agreement. As explained *ante*, Howard and Mark have an interest in maintaining the confidentiality of Smith's work product because of their virtually identical interests.

■ The close relationship between DDC, Howard, and Mark, and the absence of any evidence or inference that Smith acted in a manner inconsistent with the intent to retain the confidentiality of his work product compels the conclusion the privilege was not waived.

## DISPOSITION

The part of the order denying the motion to disqualify Jones is reversed and the trial court is instructed to enter a new order granting the motion to disqualify Jones. Defendants are awarded their costs.

Gomes, J., and Dawson, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 15, 2006, S140776. George, C. J., did not participate therein.