Filed 12/18/14  Reimche v. Church CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LUCY REIMCHE, | |
| Plaintiff and Respondent, | F068384 |
| v. | (Super. Ct. No. 12CECG00719) |
| JOHN CHURCH et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Sagaser, Watkins & Wieland, Howard A. Sagaser and Ian B. Wieland for Defendants and Appellants.

The Law Offices of Gregory J. Smith, Gregory J. Smith; Campagne, Campagne & Lerner, Justin T. Campagne and Wiley R. Driskill for Plaintiff and Respondent.

-ooOoo-

Defendants appeal from an order disqualifying their attorney, his associated cocounsel, and the law firms of both attorneys from representing defendants in this litigation.  The disqualification was based on the associated cocounsel's prior

consultation with and advice to plaintiff in connection with the same dispute, which the trial court found gave rise to an attorney-client relationship. Because the cocounsel accepted employment adverse to plaintiff, his former client, in the same matter in which he represented her and without her written consent, he and his law firm were disqualified. Defense counsel and his law firm were also vicariously disqualified. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff joined defendants' accounting firm in March 2008. She asserts she was promised a partnership agreement and a salary of at least $250,000 if she joined the firm. After joining the firm, however, she contended the partnership agreement was never finalized and executed, and she was not paid as promised. She resigned from the firm and, in March 2012, sued the partnership (TCA Partners), another partnership (KHJC & Partners), and several partners (John Church, Rick Jackson, Kelly Hohenbrink, Jerrel Tucker, and Bobby Church). Initially, defendants were represented by James B. Betts and his firm, Betts, Rubin & McGuinness. In January 2013, defendants associated Russell K. Ryan and his firm, Motschiedler, Michaelides, Wishon, Brewer & Ryan, LLP, as cocounsel with Betts. Plaintiff filed a motion to disqualify Betts, Ryan, and their law firms from representing defendants in this litigation. Plaintiff asserted she consulted with Ryan about her claims and he assisted and advised her, which gave rise to an attorney-client relationship. She contends Ryan's representation of defendants in this lawsuit, which arose out of the same dispute about which she consulted him, created a conflict of interest which justified disqualifying both Ryan and Betts.

In support of her motion, plaintiff presented evidence that, while she worked for defendants, she consulted Ryan about her partnership and salary claims against defendants. She asked for his assistance in finalizing a proposed partnership agreement with TCA Partners; with input from her and from defendant Jackson, Ryan drafted the agreement. Plaintiff had private conversations with Ryan, and they exchanged e-mails;

2

she conveyed confidential information to him that was material to her claims against defendants. Plaintiff asserts both of them agreed their conversations would be kept confidential. On May 18, 2011, she and Ryan met alone at a restaurant and discussed the dispute about partnership and compensation; she shared her confidential thoughts, observations, and impressions with Ryan. Ryan advised her about the dispute and suggested writing a letter to defendants laying out the issues that needed to be resolved. Plaintiff drafted the letter and Ryan edited it. Ryan did not want her to disclose to defendants that he had helped with the drafting of the letter. Ryan billed plaintiff directly for the May 18, 2011, meeting and the revision of the letter to defendants; she paid with her own funds. On other occasions, Ryan billed TCA Partners, which forwarded the bills to plaintiff for payment.

In late summer 2011, when it seemed probable the dispute would end in litigation, Ryan informed plaintiff on multiple occasions that, because of his representation of both plaintiff and defendants, he would not be able to represent any party in such litigation.

In opposition to plaintiff's motion, defendants asserted Ryan did not have an attorney-client relationship with plaintiff because, at all relevant times, he was representing defendants as their attorney and plaintiff was aware of that. Ryan declared he had represented TCA Partners as its attorney since Jackson, John Church, and Tucker started their practice together in 2001 or 2002. Ryan had also represented Jackson, Tucker and John Church since at least 2002. Beginning in 2009, Ryan worked with these individuals to draft a partnership agreement to formalize the partnership's relationship with contracting accountants, such as plaintiff. The draft agreements were never finalized.

In January, 2011, Ryan met with Jackson, Church, Tucker and other professionals they worked with to discuss the draft agreement; plaintiff attended the meeting. In April, 2011, Jackson asked Ryan to meet directly with plaintiff to discuss questions or concerns

3

she might have about the draft agreement and her relationship with defendants. Shortly after, plaintiff sent Ryan an April 15, 2011, e-mail asking him for help finalizing the agreement because it was holding things up. Ryan asserted that, in drafting the agreement and discussing it with plaintiff, he was at all times acting in his capacity as legal counsel for TCA Partners, and not for plaintiff. He stated he did not recall telling plaintiff that her comments would remain confidential, or that he could or would act as her legal counsel; he told her, and she knew at all times, that he was legal counsel for TCA Partners.

Ryan asserts he met with plaintiff on May 18, 2011, at Jackson's express direction; he agreed to look over the draft letter plaintiff was preparing to send to Jackson and Church and give her his thoughts, in an effort to work through the issues for TCA Partners, not as her attorney. Ryan asserted he never expressly agreed to keep plaintiff's communications confidential, and never led her to believe he was acting as her legal counsel or could represent her in her dealings with TCA Partners. He acknowledges saying in telephone conversations with plaintiff and her attorney and in e-mails that he would not be able to represent anyone in litigation, "but that statement was made strictly because of my personal feelings about the individuals involved at the time. It was not because I thought there had been an attorney-client relationship created between Plaintiff and me." Both Ryan and Betts denied that Ryan disclosed any confidential information obtained from plaintiff to Betts.

The judge who initially heard the matter directed Ryan to provide a declaration explaining why he failed to advise plaintiff that he was not her counsel and explaining the circumstances of his accepting payment for alleged legal services provided. He directed plaintiff and her attorney to file a declaration under seal "containing a recitation of the actual confidential communications that were passed between Plaintiff Reimche and attorney Ryan." That judge was subsequently disqualified pursuant to Code of Civil

4

Procedure section 170.1.  The parties filed the additional declarations and the newly assigned judge heard and granted the motion, disqualifying Ryan, Betts, and their respective law firms.  Defendants appeal.

## *DISCUSSION*

### I.    Appealability and Standard of Review

"[A]n order granting or denying a motion to disqualify an attorney is appealable, either as a denial of injunctive relief or as a final order upon a collateral matter unrelated to the merits of the underlying litigation."  (*Truck Ins. Exchange v. Fireman's Fund Ins. Co*. (1992) 6 Cal.App.4th 1050, 1052, fn. 1; *Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 218.)

In reviewing an order granting disqualification of counsel, "the judgment of the lower court is presumed correct and all intendments and presumptions are indulged to support it on matters as to which the record is silent.  [Citation.]  Conflicts in the declarations are resolved in favor of the prevailing party and the trial court's resolution of factual issues arising from competing declarations is conclusive on the reviewing court.  [Citations.]"  (*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1451.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.  [Citations.]  If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.  [Citations.]  When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion.  [Citation.]  However,  the trial court's discretion is limited by the applicable legal principles. [Citation.]  Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's

5

determination as a question of law. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*. (1999) 20 Cal.4th 1135, 1143-1144 (*SpeeDee Oil*).)

## II.     Disqualification of Ryan and His Firm

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' (Code Civ. Proc., § 128, subd. (a)(5) ….) Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process. [Citations.]" (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1145.)

Plaintiff's motion to disqualify Ryan was based on rule 3-310(E) of the Rules of Professional Conduct of the State Bar of California (rule 3-310(E)) which provides: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." "The rule implements the ethical imperative of Business and Professions Code section 6068, subdivision (e), which states that it is the obligation of every attorney '[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.'" (*Adams v. Aerojet-General Corp*. (2001) 86 Cal.App.4th 1324, 1334 (*Adams*).) Rule 3-310(E) generally has been invoked in two situations: "where the attorney successively represents clients with potential or actual adverse interests and where the attorney simultaneously represents clients with potential or actual adverse interests." (*Jessen v. Hartford Casualty Ins. Co*.

6

(2003) 111 Cal.App.4th 698, 705 (*Jessen*).) We are concerned here with a question of successive representation: whether Ryan accepted employment adverse to plaintiff, his former client, in an action arising out of the same dispute about which she had previously consulted him and obtained his advice.

### A.      *Existence of attorney-client relationship*

Defendants contend the trial court erred in disqualifying Ryan, because plaintiff failed to demonstrate that an attorney-client relationship existed between her and Ryan. Defendants contend Ryan was at all times acting as counsel for TCA Partners; he met with plaintiff at the direction of Jackson, and plaintiff was aware he represented TCA Partners. Under these circumstances, defendants contend plaintiff could not reasonably have believed Ryan was representing her to the exclusion of TCA Partners. Essentially, defendants are asking this court to reweigh the facts and reach a conclusion contrary to that reached by the trial court. This we cannot do. If there is substantial evidence in the record, contradicted or uncontradicted, supporting the trial court's factual findings, we cannot substitute our own findings for those of the trial court. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.)

"'Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal. [Citation.]' [Citations.]" (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1732 (*Citizens*).) "An express contract is one, the terms of which are stated in words." (Civ. Code, § 1620.) "An implied contract is one, the existence and terms of which are manifested by conduct." (Civ. Code, § 1621.) "'The distinction between *express* and *implied in fact* contracts relates only to the *manifestation of assent*; both types are based upon the expressed or apparent intention of the parties.' [Citation.]" (*Citizens*, at pp. 1732-1733.) There is no contention in this case that an attorney-client relationship between plaintiff and Ryan was created by appointment of

7

counsel or express contract. Consequently, the question is whether an implied in fact contract was created by their conduct.

An attorney who represents a partnership does not automatically have an attorney-client relationship with an individual partner. (*Citizens*, *supra*, 16 Cal.App.4th at p. 1731.) Here, however, plaintiff is not claiming an attorney-client relationship arose between her and the partnership's attorney by virtue of her position as a partner in the partnership. Rather, she is claiming an attorney-client relationship arose as a result of interactions between Ryan and plaintiff individually.

The trial court found an attorney-client relationship existed between plaintiff and Ryan. In support of that finding, it noted plaintiff sought advice and counsel from Ryan about the partnership agreement and her claim for additional compensation on multiple occasions. They privately discussed her claims; she asked that he keep their communications confidential, and he did not tell her he would not do so. Ryan did not tell plaintiff that he did not represent her or that he represented only TCA Partners; he did not advise her to seek independent counsel to represent her in her dispute with TCA Partners. Ryan advised plaintiff about her dispute with defendants and helped her draft a demand letter setting out her claims against defendants. Plaintiff reimbursed TCA Partners for work Ryan did for her, and Ryan directly billed plaintiff for his legal services on one occasion. Finally, Ryan stated in e-mails that he could not represent either side in the event of litigation between them because he had represented them both. The trial court described this evidence as "[p]articularly damning," and rejected as unconvincing Ryan's attempt to explain those statements as being based on the relationships of the people involved and not on the existence of an attorney-client relationship.

The trial court's findings are supported by substantial evidence. Plaintiff joined TCA Partners in 2008. In 2009, Ryan began drafting a partnership agreement to formalize the relationship between TCA Partners and the professionals who worked for

8

it, including plaintiff.  In April 2011, plaintiff asked Ryan for assistance in finalizing her proposed partnership agreement with TCA Partners.  Ryan had private meetings with plaintiff during which they discussed matters plaintiff asked Ryan to keep confidential; in e-mails, she expressed her appreciation that he was keeping the information confidential.  Plaintiff declared she and Ryan "both agreed that these conversations should be kept completely confidential."  Although the evidence was conflicting, there was evidence Ryan did not tell plaintiff he did not represent her, did not tell plaintiff he represented only TCA Partners, and did not tell plaintiff he would not keep her information confidential.

On May 18, 2011, Ryan and plaintiff met privately at a restaurant and discussed plaintiff's dispute with defendants over the partnership agreement and compensation.  Plaintiff discussed with Ryan her confidential thoughts, observations, and impressions of the dispute with defendants.  In a declaration filed under seal, plaintiff explained the nature and content of the confidential information she disclosed to Ryan.  Ryan advised her and suggested drafting a letter to defendants setting out the issues that needed to be resolved.  He subsequently reviewed and made extensive changes to the letter she drafted.  Plaintiff denied Ryan's claim that he met with her on May 18, 2011, at Jackson's request or with Jackson's knowledge.  She also denied his claim he merely looked over her draft letter "in an effort to work through the issues on the part of TCA Partners and not as her attorney."  Plaintiff stated she and Ryan discussed reasons they should keep their meetings confidential, including her fear that Church and other defendants would retaliate against her for standing up to them.  Ryan understood her concerns and agreed to meet away from TCA Partners' office on May 18, to hide the meeting from defendants.  Further, Ryan told her he did not want anyone at TCA Partners to know he was involved in drafting her letter to defendants; when he e-mailed the revisions to her, he instructed her to save his draft as a new file.

9

Plaintiff declared that she believed Ryan was acting as her attorney and providing her with legal advice regarding how to resolve her dispute with defendants. Ryan met with plaintiff, discussed with her the dispute with defendants, and advised her how to proceed. Plaintiff offered to either reimburse TCA Partners for the time Ryan spent with her or be billed directly. For some of his work, Ryan billed TCA Partners, and TCA Partners forwarded the bill to plaintiff. For the May 18, 2011, meeting and the revision of the demand letter, plaintiff was billed directly. Ryan's law firm sent her a bill on its letterhead, charging her for "[p]rofessional services rendered"; the services were itemized as a May 18, 2011, conference with plaintiff and reviewing and revising correspondence regarding partnership issues. Plaintiff paid Ryan for his services with her personal funds. It can be reasonably inferred from their conduct that both parties understood plaintiff was consulting Ryan in his capacity as an attorney and Ryan was rendering advice and counsel in that capacity.

In an e-mail to plaintiff dated August 5, 2011, Ryan stated: "As I mentioned in our past conversations, because of my relationship with you, on the one hand, and John and Rick, on the other, I would not be able to represent anyone in any litigation, but I would certainly do my best to facilitate a resolution and settlement if I can." In another e-mail to plaintiff, dated two days later, after expressing a wish that Church would "come to his senses and work through issues with you soon," Ryan stated: "However, and as we discussed, I cannot be involved in any representation of anyone if the matters escalate to litigation due to my representation of both of you." Thus, Ryan himself referred to his "representation" of plaintiff and implicitly recognized the conflict in representing both TCA Partners and plaintiff.

Both express and implied in fact contracts are based on agreement of the parties. (*Caron v. Andrew* (1955) 133 Cal.App.2d 412, 417.) Agreement to an express contract is manifested in words, either oral or written. (*Id*. at p. 416.) Agreement to an implied in

10

fact contract must be "inferred from the conduct, situation, or mutual relation of the parties." (*Id*. at p. 417.) Mutual assent to a contract is based upon objective and outward manifestations of the parties; subjective intent is irrelevant. (*Stewart v. Preston Pipeline, Inc*. (2005) 134 Cal.App.4th 1565, 1587.) We conclude the evidence of Ryan's objective manifestations of agreement with plaintiff was sufficient to support the trial court's conclusion that plaintiff and Ryan entered into an implied in fact contract for Ryan to provide legal advice and counsel to plaintiff in connection with her dispute with TCA Partners and to keep her information confidential.

### B. *Substantial relationship between prior and current representations*

"A per se or automatic disqualification rule applies when counsel's representation of one client is adverse to the interests of another *current* client. [Citation.] When the current representation is adverse to the interests of a *former* client, though, disqualification may be necessary only if the attorney, by reason of the former representation, obtained confidential information material to the current representation. If there is a 'substantial relationship' between the two representations, courts presume that confidences which may have value in the current representation were disclosed in the first representation. [Citations.]" (*Citizens, supra,* 16 Cal.App.4th at p. 1724.) Accordingly, even in the absence of proof the attorney actually possesses confidential information obtained from the former client in the prior representation, the court will presume the attorney obtained confidential information if the substantial relationship test is met. (*Adams*, *supra*, 86 Cal.App.4th at p. 1331.) In that event, disqualification of the attorney from representation of the current client is mandatory. (*Jessen, supra*, 111 Cal.App.4th at p. 706.) The test avoids an inquiry into the actual extent of the attorney's knowledge acquired from the prior representation. "'The conclusive presumption … avoids the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear the legal

11

profession's intent to preserve the public's trust over its own self-interest. [Citations.]' [Citation.]" (*Jessen*, at p. 706.)

There are two variables in the substantial relationship test: "(1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation." (*Jessen, supra*, 111 Cal.App.4th at p. 709.) "If the relationship between the attorney and the former client is shown to have been direct—that is, where the lawyer was personally involved in providing legal advice and services to the former client—then it must be presumed that confidential information has passed to the attorney and there cannot be any delving into the specifics of the communications between the attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship.… This is so because a direct attorney-client relationship is inherently one during which confidential information 'would normally have been imparted to the attorney by virtue of the nature of [that sort of] former representation,' and therefore it will be conclusively presumed that the attorney acquired confidential information relevant to the current representation if it is congruent with the former representation." (*Ibid*.) In this situation, whether disqualification is warranted "will depend upon the strength of the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation." (*Ibid*.)

"On the other hand, where the former attorney-client relationship is peripheral or attenuated instead of direct, then the presumption will not be applied in the absence of an adequate showing that the attorney was in a position vis-a-vis the client to likely have acquired confidential information material to the current representation." (*Jessen, supra,* 111 Cal.App.4th at p. 710.) In that situation, the court must consider both whether that

the attorney's relationship with the former client was such that it was reasonably likely he would have acquired confidential information material to the representation of the subsequent client, and whether there was a substantial relationship between the legal problem involved in the former representation and the legal problem involved in the current representation. (*Ibid.*)

The relationship between plaintiff and Ryan was direct; Ryan personally communicated with plaintiff and provided legal advice and services to her. Thus, we must presume plaintiff imparted confidential information to Ryan in the course of their relationship and we cannot delve into the specifics of their communications to allow Ryan to attempt to rebut that presumption. Ryan's arguments that plaintiff was just "venting" or gossiping when she spoke with him and did not discuss confidential information, and that the letter he helped her draft was to be sent to defendants, so it could not have been confidential, invite this court to delve into the specifics of their attorney-client communications. Where the relationship between attorney and former client was direct, however, the presumption that confidential information was shared is conclusive and we will not inquire into the nature or actual content of the communications between attorney and former client. (*Jessen*, *supra*, 111 Cal.App.4th at p. 709.)

Thus, the only remaining question is whether the subjects of the prior representation and the current representation were the same or substantially related. (*Farris v. Fireman's Fund Ins. Co*. (2004) 119 Cal.App.4th 671, 683.) The trial court found they were and substantial evidence supports that conclusion. Both representations involved the same matter: plaintiff's claims against defendants arising out of defendants' alleged promise to enter into a partnership agreement with plaintiff and their alleged underpayment for her services. Consequently, defendants have not demonstrated that the

13

trial court abused its discretion by disqualifying Ryan from representing defendants in this matter.

When, in a case of successive representation, the subjects of the two representations are substantially related, and the attorney is disqualified, the need to protect the former client's confidential information requires that the "presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm." (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1146.)  Accordingly, because the subjects of the two representations were the same and Ryan was disqualified, it was proper to also disqualify Ryan's law firm.  We find no abuse of discretion in the trial court's disqualification of Ryan and his law firm.

## III.    Disqualification of Betts and His Firm

The trial court concluded it was bound to follow this court's decision in *Pound v. DeMera DeMera Cameron* (2005) 135 Cal.App.4th 70 (*Pound*), apparently because it was the decision of its own district, even though it found *Kirk v. First American Title Ins. Co*. (2010) 183 Cal.App.4th 776 (*Kirk*) to be better reasoned.[1]  Following *Pound*, the trial court disqualified Betts and his firm because they associated as cocounsel an attorney, Ryan, who had consulted with the opposing party in the same matter.  Although *Kirk* may

---

[1]    We note that, if the decisions in *Pound* and *Kirk* were conflicting, the trial court was not bound to follow the *Pound* decision simply because it was a decision of this court, but was free to follow the decision it determined to be better reasoned.  "Decisions of every division of the District Courts of Appeal are binding … upon all the superior courts of this state." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Where there is more than one appellate court decision and those decisions are in conflict, the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions. (*Id*. at p. 456.)  "As a practical matter, a superior court ordinarily will follow an appellate opinion emanating from its own district even though it is not bound to do so.  Superior courts in other appellate districts may pick and choose between conflicting lines of authority." (*McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 315, fn. 4.)

14

be well reasoned, it would have been error to follow it in this case, because its reasoning and decision do not apply to the situation presented in this case.

In *Pound*, the plaintiffs, represented by attorney Andrew B. Jones, sued their employer and later added the employer's two controlling shareholders as defendants. The shareholders, seeking counsel to represent them individually, had the employer's attorney, Michael J. F. Smith, interview candidates. Smith interviewed attorney Peter S. Bradley for approximately one hour, discussing specifics of the case, "including issues, personalities, vulnerabilities, and other topics properly described as attorney work product." (*Pound, supra*, 135 Cal.App.4th at p. 74.) The shareholders did not retain Bradley. Three years later, the plaintiffs' attorney Jones consulted with Bradley because of his experience in corporate matters, and they discussed the case, but only the facts and issues provided by Jones. Bradley told Jones he had met with Smith about a case in which Jones was opposing counsel, but he did not know if it was the same case. (*Ibid*.) Bradley associated in as the plaintiffs' counsel with Jones. The defendants moved to disqualify both Bradley and Jones. The trial court disqualified only Bradley. The defendants appealed the denial of the motion to disqualify Jones. (*Id*. at p. 75.) We reversed.

The defendants contended the trial court abused its discretion because Smith communicated privileged information to Bradley, and Bradley subsequently consulted with Jones, so there was a possibility Bradley, intentionally or unintentionally, disclosed privileged information to Jones. (*Pound, supra*, 135 Cal.App.4th at p. 75.) Jones denied receiving any of the defendants' confidential information from Bradley. (*Ibid*.) The trial court had determined Bradley entered into an attorney-client relationship with the shareholders when he interviewed with Smith, who disclosed confidential information to him. (*Id*. at p. 76.) Accordingly, we analyzed the case as one involving successive representation and applied the substantial relationship test. (*Id*. at pp. 75-76.) When

15

Bradley associated with Jones as counsel for the plaintiffs, he entered into representation adverse to his former clients; he switched sides, the "'most egregious conflict of interest.'" (*Id*. at p. 76.) Thus, Bradley was properly disqualified.

Regarding disqualification of Jones, we viewed the matter as "essentially identical to those cases involving attorneys changing law firms, from one side (plaintiffs) to the other (defendants), during the pendency of a case." (*Pound, supra*, 135 Cal.App.4th at p. 76.) We cited *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, where an attorney who worked for the firm representing the defendant and who was actively involved in the litigation became employed by the firm representing the plaintiff, which constructed an "ethical wall" to isolate him from the case. (*Pound,* at pp. 76-77.) The *Henriksen* court upheld the order disqualifying the firm that represented the plaintiff, stating: "'[W]e believe the rule to be quite clear cut in California: where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law. [Citations.]' [Citation.]" (*Pound,* at p. 77.)

In *Pound,* we were not concerned with ethical wall issues, because there was no ethical wall attempted in that case. "Indeed, the very purpose Bradley was hired by plaintiffs was to assist in the trial of the case." (*Pound, supra*, 135 Cal.App.4th at p. 77.) We applied the substantial relationship test for successive representation, and the rule that, in order to protect the client's confidential information, the presumption the disqualified attorney had access to confidential information "'extends the attorney's disqualification vicariously to the attorney's entire firm. [Citation.]' [Citation.]" (*Id*. at p. 78.) We applied the rule even though Bradley merely associated with the plaintiff's attorney, rather than being hired by his firm. "The distinction between hiring Bradley as an associate or partner, on the one hand, and associating him as counsel, on the other

16

hand, does not change the need to protect defendants' confidences. The only effective method to protect defendants' confidences from the possibility of inadvertent disclosure is also to disqualify Jones." (*Ibid*.)

Here, as in *Pound*, the trial court found an attorney-client relationship existed between the first client and the tainted attorney prior to that attorney's association as counsel for the opposing party. As in *Pound*, the tainted attorney later associated into litigation involving the very dispute about which the first client had previously consulted him. As in *Pound*, the tainted attorney and the attorney with whom he associated denied any confidential information from the first representation was disclosed between them. As in *Pound*, there was no ethical wall issue, because the tainted attorney was associated with opposing counsel specifically to assist in the litigation against the first client. Thus, there was no way the tainted attorney could be isolated from the attorneys conducting the litigation on behalf of the plaintiff; he was retained to work with them. Because of the strong similarities between this case and the *Pound* case, the trial court did not abuse its discretion by following *Pound* and concluding it required the vicarious disqualification of Betts and his firm.

*Kirk* presented a significantly different factual situation. In *Kirk*, First American was a defendant in four related class actions. (*Kirk, supra*, 183 Cal.App.4th at p. 785.) It was represented in those cases by three attorneys from Bryan Cave LLP, who had defended it in 80 class actions nationwide. The three attorneys had unique familiarity with First American's personnel, products, and operations. (*Ibid*.)

The plaintiffs' counsel sought the services of attorney Gary Cohen as a consultant and disclosed confidential information to him about the class actions; Cohen declined the consulting position. (*Kirk, supra,* 183 Cal.App.4th at p. 786.) Cohen later joined Sonnenschein Nath & Rosenthal LLP. (*Id*. at p. 787.) Within a month, the three attorneys representing First American also joined the Sonnenschein firm. (*Ibid*.) The

17

plaintiffs objected to the Sonnenschein firm's representation of First American due to the plaintiffs' prior confidential consultation with Cohen. The Sonnenschein firm established an ethical wall around Cohen to isolate him from contact with the class actions. (*Id*. at p. 788.)

The plaintiffs moved to disqualify the Sonnenschein firm from representing First American in the class actions. The trial court granted the motion, finding the plaintiffs' attorney had disclosed confidential information to Cohen and interpreting case law to provide that, "when an attorney possesses disqualifying confidential client information, vicarious disqualification of the law firm is *automatic*, regardless of any ethical screening wall created." (*Kirk, supra*, 183 Cal.App.4th at p. 790.) The reviewing court disagreed, concluding "vicarious disqualification is not automatic, but may be rebutted by a proper ethical wall." (*Id*. at p. 791.)

The *Kirk* court traced the history of vicarious disqualification cases and concluded they did not establish an absolute rule of vicarious disqualification. Vicarious disqualification is imposed because "conflict is normally imputed to the tainted attorney's entire firm on the rationale that attorneys practicing together generally share each other's, and their clients', confidential information. [Citation.]" (*Kirk, supra*, 183 Cal.App.4th at p. 799.) The *Kirk* court criticized the imputation of the tainted attorney's conflict to the entire firm as outdated and not consistent with the nature of today's large law firms, where one attorney may not know or have contact with members of the same firm working in a different department either across the hall or across the globe. (*Id*. at pp. 801-802.)

Based on its historical review, the court concluded: "We do not doubt that vicarious disqualification is the *general* rule, and that we should presume knowledge is imputed to all members of a tainted attorney's law firm. However, we conclude that, in the proper circumstances, the presumption is a rebuttable one, which can be refuted by

18

evidence that ethical screening will effectively prevent the sharing of confidences in a particular case." (*Kirk, supra*, 183 Cal.App.4th at p. 801.) *Kirk* addressed a situation in which an attorney changed firms and joined a firm that represented a client adverse to a former client the attorney represented in his prior employment. At the new firm, the attorney was screened from contact with the attorneys actually representing the adverse client. The court essentially determined that, when such a screen is adequate to protect the prior client's confidential information, disqualification of the entire firm may not be necessary.

Here, in contrast, Ryan associated into a case to represent parties adverse to his former client in litigation of the very dispute about which he previously advised plaintiff, his former client. There was no question of building an ethical wall to screen Ryan out of the case. Ryan was associated directly into it. The purpose of his association was to obtain his participation in representing the defendants in this action. When the tainted attorney is actively participating in the representation of a party adverse to the former client, no ethical wall can be erected to protect the former client's confidences and the firm must be vicariously disqualified. Additionally, "if the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive." (*Kirk, supra*, 183 Cal.App.4th at p. 814.)

Even if we were to follow the *Kirk* case, we would reach the same result. Defense counsel made no attempt at all to screen Ryan, the tainted attorney, from contact with this case. Adequately screening Ryan and isolating him from the case would have required disassociating him from the representation of defendants before he had an opportunity to communicate any confidential information, intentionally or inadvertently, to Betts or any other attorney participating in the defense. This did not occur. The evidence indicates Ryan and Betts engaged in "substantive discussions" while jointly representing

19

defendants at an all-day mediation session, although they denied discussing any information provided by plaintiff.

Defendants contend the difference between *Pound* and this case is that the trial court in *Pound* found there was actual disclosure of the client's confidential information to the tainted attorney (*Pound*, *supra*, 135 Cal.App.4th at p. 76), but here the trial court did not make such an express finding. The significance of the finding of actual disclosure in *Pound* was that Bradley, the tainted attorney, was never retained by the defendants and never actively represented them. In the absence of actual disclosure to him of the defendants' confidential information, there would have been no basis for a finding that Bradley had an attorney-client relationship with the defendants that would have required his disqualification from representing the plaintiffs or would have imposed on him an obligation to keep the defendants' information confidential.[2] Here, the trial court found there was an attorney-client relationship between plaintiff and Ryan. Where the attorney was directly and personally involved in providing legal advice and services to the former client, it is presumed confidential information passed between the two, and the court cannot delve into specific communications to determine whether the attorney actually received any confidential information during the course of the relationship. (*Jessen*, *supra*, 111 Cal.App.4th at p. 709.) This is true whether the court is contemplating disqualification of the individual attorney or of the firm he joined or associated with in representation of the current client.

The trial court did not abuse its discretion by following the decision in *Pound* and disqualifying Betts and his firm on that basis.

---

[2]    The same is true of *Kirk*. Cohen was never retained to represent the plaintiffs, and the only basis for finding an attorney-client relationship between Cohen and the plaintiffs was the disclosure of confidential information to Cohen when plaintiffs' counsel approached him about acting as a consultant.

20

## *DISPOSITION*

    The order is affirmed.  Plaintiff is entitled to her costs on appeal.


                             _____
                                       HILL, P. J.

WE CONCUR:


_____
LEVY, J.


_____
DETJEN, J.