Filed 7/12/23  Hudson v. Hudson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KENNON HUDSON, | H049893 |
| | (Santa Clara County |
| Plaintiff and Appellant, | Super. Ct. No. 21CV386623) |
| v. | ORDER MODIFYING OPINION |
| DANIEL HUDSON, | NO CHANGE IN JUDGMENT |
| Defendant and Respondent. | |

**BY THE COURT**:

It is ordered that the opinion filed herein on June 16, 2023, be modified as follows:

On page 5, the first paragraph of the Discussion section shall now read:

"Orders disqualifying counsel are reviewable for abuse of discretion.  (See, e.g., *In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)  Under this standard, a trial court's factual findings are reviewed for substantial evidence; its conclusions of law are reviewed de novo; and its ultimate decision, the application of law to the facts, is reversible only if arbitrary and capricious.  (*Jarvis*, *supra*, 33 Cal.App.5th at p. 128.)  Nevertheless, because disqualification raises special concerns, disqualification orders require "careful review of the trial court's exercise of discretion.  [Citation.]"  (*People ex rel. Dept. of Corrections v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144 (*SpeeDee Oil*).)  After careful review of the disqualification order here, we find no abuse of discretion.  The trial court's findings support its decision to disqualify McManis Faulkner

based on the actual possession of confidential information, and appellant's challenges to those findings are unavailing."

There is no change in the judgment.

_____
BROMBERG, J.

WE CONCUR:


_____
GREENWOOD, P.J.



_____
DANNER, J.




*Hudson v. Hudson*
H049893

Filed 6/16/23  Hudson v. Hudson CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KENNON HUDSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DANIEL HUDSON,<br><br>    Defendant and Respondent. | H049893<br>(Santa Clara County<br>Super. Ct. No. 21CV386623) |

Appellant Kennon Hudson appeals from an order disqualifying her counsel, the law firm McManis Faulkner. (See, e.g., *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 128 (*Jarvis*) [disqualification orders are directly appealable].)  The trial court found that McManis Faulkner represented respondent Daniel Hudson in a prior criminal matter and during an initial consultation on that matter received confidential information material to appellant's claims against the respondent in this suit.  These findings were supported by declarations from respondent concerning that consultation, which are sufficient to support them and justify disqualification.  Accordingly, we affirm.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Kennon Hudson (Kennon) married Robert Hudson, the father of Daniel Hudson (Daniel), in 2001 when Robert Hudson was 75 years old.[1]  After Robert Hudson died in 2017, Daniel and his stepmother Kennon became embroiled in litigation over his estate. Attorney James McManis knew Robert Hudson, and his law firm McManis Faulkner has represented Kennon in two suits against Daniel, including this one.  McManis Faulkner, however, also represented Daniel in a criminal matter, and Daniel contends that during an initial consultation for that matter he conveyed to Mr. McManis confidential information material to Kennon's current suit against him.  While Mr. McManis denies receiving this information, the trial court accepted Daniel's account of the initial consultation and disqualified Mr. McManis and his firm.

## A.  *Prior Litigation*

### 1.  The Probate Dispute

In 2018, a year after Daniel's father died, Daniel and his brother became involved in a probate dispute with their stepmother Kennon.  McManis Faulker initially was not involved in this dispute.

### 2.  The Criminal Matter

In June 2019, Daniel was arrested in connection with a dispute with his then girlfriend.  Daniel approached James McManis for help and, after an initial consultation, retained McManis Faulkner to represent him in the matter.  The case was assigned to a younger lawyer named James Giacchetti and, after Giachetti left the firm, to Brandon Rose.  Daniel's criminal matter was successfully concluded in September 2019.

---

[1] Because the parties share a last name, for the sake of clarity and convenience, we sometimes refer to them by their first names.  In doing so, we intend no disrespect.  (See, e.g., *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 550, fn. 2.)

### 3. Counsel's Appearance in the Probate Dispute

In late 2019 or early 2020, Kennon retained McManis Faulkner in her probate dispute with Daniel and his brother. Daniel did not seek to disqualify McManis Faulkner from this dispute because it was technical in nature and was headed to mediation with a mediator who had personal relationships with both James McManis and Daniel's counsel. The probate dispute suit was later resolved in favor of Kennon and was on appeal when the motion to disqualify was filed.

### B. The Current Suit

On August 4, 2021, Kennon sued Daniel for financial elder abuse. She alleged that Daniel's father was diagnosed with cancer in 2011 and suffered a stroke shortly before passing away in 2017. As a result of these maladies, Daniel's father allegedly experienced physical, mental, and verbal impairments, and Kennon contends that Daniel took advantage of these impairments to coerce his father into transferring property and businesses to him. Even more pertinently, Kennon contends that Daniel improperly "obtained a $2 million dollar loan from decedent," which was "at no interest and to be paid in twenty-five (25) years."

James McManis and McManis Faulker represented Kennon in suing Daniel for elder abuse.

### C. The Motion to Disqualify

After the elder abuse suit was filed, Daniel's counsel informed McManis Faulkner that it had a conflict of interest and should withdraw as counsel for Kennon. McManis Faulkner declined to do so, and on December 20, 2021, Daniel filed a motion to disqualify. In the motion, Daniel argued that McManis Faulkner had an irreconcilable conflict of interest primarily because during his initial consultation on the criminal matter Daniel confided to James McManis confidential information directly relating to Kennon's claim against him in the elder abuse action.

3

In support of this motion, Daniel submitted a declaration describing his initial consultation on the criminal matter, which he stated lasted approximately one hour. Daniel expressed reluctance to go into specifics of the confidential information disclosed. However, he stated that during his conversation with Mr. McManis he discussed "the note that is the basis for Kennon's elder abuse claim" as well as his concerns about Kennon's handling of his father's finances.

Although this information was unrelated to the criminal charges against him, Daniel explained that he shared the information with Mr. McManis because at that time his thoughts and feelings about Kennon, his relationship with her, and her relationship with his father were "still quite raw" due to the ongoing probate dispute, and also because he saw parallels between his relationship with his girlfriend and his father's relationship with Kennon. According to Daniel, Mr. McManis engaged with him regarding Kennon in "a sympathetic manner." In a reply declaration, Daniel added that he felt comfortable discussing these matters with Mr. McManis because of their shared heritage and because Mr. McManis knew both his father and his uncle.

Mr. McManis denied that Daniel shared with him any information concerning the note, Daniel's concerns about Kennon's handling of his father's finances, or his relationship with Kennon. Indeed, Mr. McManis denied that he engaged with Daniel sympathetically concerning Kennon or even was aware at the time that Kennon was Daniel's stepmother. Instead, Mr. McManis asserted that the initial consultation concerned only Daniel's arrest and the events preceding it, and he denied that Daniel said anything about his stepmother, his concerns about his father, or his father's finances. James Giachetti and Brandon Rose, the lawyers who handled the criminal matter, likewise denied any recollection of Daniel discussing Kennon or knowing that he had a stepmother.

Although both parties asked to present witnesses in an evidentiary hearing, the trial court declined to take testimony and only heard argument from the parties.

4

Afterwards, in a written order, the trial court granted the motion to disqualify. It noted that Daniel had submitted declarations in which he specifically recalled discussing with Mr. McManis, among other things, "the note at issue in this action," and that this communication substantially related to issues in the case before it. Moreover, the court accepted this testimony, stating that "the Court finds that the Defendant has met his burden in showing that confidential information was disclosed to Mr. McManis and his firm during the prior relationship regarding facts and issues that are relevant to the current action."

The trial court disqualified McManis Faulkner from further representation of Kennon in this case. Kennon timely appealed.

## II. DISCUSSION

Orders disqualifying counsel are reviewable for abuse of discretion. (See, e.g., *In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) Under this standard, a trial court's factual findings are reviewed for substantial evidence; its conclusions of law are reviewed de novo; and its ultimate decision, the application of law to the facts, is reversible only if arbitrary and capricious. (*Jarvis*, *supra*, 33 Cal.App.5th at p. 128.) Nevertheless, because disqualification raises special concerns, disqualification orders require "careful review of the trial court's exercise of direction. [Citation.]" (*People ex rel. Dept. of Corrections v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144 (*SpeeDee Oil*).) After careful review of the disqualification order here, we find no abuse of discretion. The trial court's findings support its decision to disqualify McManis Faulkner based on the actual possession of confidential information, and appellant's challenges to those findings are unavailing.

When courts disqualify counsel based on former representation, they typically do presume possession of confidential information because there is a "substantial relationship" between the matter in which counsel represented a prior client and the current claims brought by counsel against that party. (See, e.g., *City and County of San*

5

*Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847 (*Cobra Solutions*); *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 286.) It is well-settled, however, that where counsel has "actual knowledge of material confidential information" from a former client, counsel may be disqualified from representing parties adverse to that former client. (*Faughn v. Perez* (2006) 145 Cal.App.4th 592, 603 (*Faughn*); see *Costello v. Buckley* (2016) 245 Cal.App.4th 748, 757 (*Costello*); *Pound v. DeMera DeMera Cameron* (2005) 135 Cal.App.4th 70, 76 (*Pound*.) As the Supreme Court has recognized, "[p]rotecting the confidentiality of communications between attorney and client is fundamental to our legal system." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146). Indeed, attorneys are required by statute as well as ethical rules "[t]o maintain inviolate the confidence" of their clients (Bus. & Prof. Code, § 6068, subd. (e); see Rules of Prof. Conduct, rule 1.6, subd. (a)), and this duty to preserve client confidences "survives the termination of the attorney's representations." (*Cobra Solutions*, *supra*, 38 Cal.4th at pp. 846-847.) Consequently, to maintain public trust in the administration of justice and the integrity of the bar, courts may disqualify an attorney (and the attorney's firm) from representing a new client bringing claims against a former client if the former client disclosed to the attorney confidential information material to those claims. (*Id*. at p. 846; *SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1145-1146; see also *Cobra Solutions*, *supra*, 38 Cal.4th at p. 847 ["Normally, an attorney's conflict is imputed to the law firm as a whole . . . ."].)

The trial court's findings bring appellant's counsel squarely within this rule. The court accepted the description in Daniel's declarations of his initial consultation with Mr. McManis in the criminal matter. In particular, the court credited Daniel's averment that he discussed "the note at issue in this action" and therefore inferred that Daniel disclosed to Mr. McManis information "related to the current action." This inference was reasonable: the complaint alleges that after his father's stroke in September 2017 Daniel improperly obtained "a $2 million dollar loan from decedent at no interest and to be paid in twenty-five (25) years," and promissory notes frequently accompany loans and

6

embody their terms.  (See, e.g., Rest.3d Suretyship and Guaranty, § 1, com. g., illus. 7 [discussing loan "evidenced by a promissory note"]; see also 5 Miller & Starr, Cal. Real Est. Forms (2d ed. 2022) § 3:8, p. 38 ["The primary instrument used in a real property secured loan is the promissory note."]; *id.*, § 3:14, p. 165 ["The primary instrument used in a construction loan is the promissory note."].)  As appellate courts applying the substantial evidence standard must accept the trial court's credibility determinations and reasonable inferences (see, e.g., *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 *(Mix)),* we conclude that during his initial consultation with Daniel Mr. McManis received information concerning a promissory note connected with the very loan challenged in this case and thus is in actual possession of material confidential information.  As noted above, actual possession of such information warrants disqualification.[2]  (See, e.g., *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146; *Faughn*, *supra*, 145 Cal.App.4th at p. 603 *Costello*, *supra*, 245 Cal.App.4th at p. 757; *Pound*, *supra,* 135 Cal.App.4th at p. 76.)

Appellant asserts that the trial court failed to resolve the dispute between the declarations submitted by Daniel and Mr. McManis about the information discussed during the initial consultation.  In fact, the trial court resolved this conflict by accepting Daniel's account of the consultation.  It recognized that Daniel and Mr. McManis disputed whether confidential information concerning this suit was disclosed during the consultation, but found "that the Defendant has met his burden in showing that the confidential information was disclosed to Mr McManis and his firm."

Appellant also argues that the trial court should have rejected Daniel's declarations and accepted Mr. McManis' declaration instead.  According to appellant, in addition to being "controverted" and "specifically refuted by Mr. McManus as 'false,' "

---

[2] Because disqualification is justified by counsel's possession of information concerning the note at issue in this case, we do not consider whether possession of other confidential information, such as Daniel's arrest in the criminal matter, justified disqualification.  For the same reason, we deny as moot Daniel's motion to augment the record to include a transcript in which Mr. McManis mentioned the arrest.

Daniel's declarations contained "unsupported self-serving allegations" that were "highly improbable" and, indeed, "unreasonable, incredible, and devoid of solid value." These arguments cannot be entertained on appeal. In reviewing a trial court's findings for substantial evidence, appellate courts " 'have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518; see also *In re Caden C.* (2021) 11 Cal.5th 614, 640 ["In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' "]).

Moreover, even if we were able to consider appellant's factual arguments, we would see no reason to second guess the trial court. Daniel provided a plausible explanation for bringing up the promissory note and the dispute with his stepmother during his consultation on the criminal matter: among other things, the dispute was on his mind because of the probate action filed the year before and he felt comfortable unburdening himself to Mr. McManis because Mr. McManis knew his father.

Appellant raises several legal challenges, but none of them are persuasive. For example, appellant asserts that the trial court could not have made "any meaningful findings of fact" because "no hearing was ever held." Ordinarily, however, trial courts do not hold evidentiary hearings in resolving motions. The Rules of Court state that "[e]vidence received at a law and motion hearing must be by declaration . . . *without testimony or cross-examination*, unless the court orders otherwise for good cause shown." (Cal. Rules of Court, rule 3.1306(a), italics added.) Moreover, the Supreme Court has expressly rejected the notion that evidentiary hearings are required to resolve evidentiary conflicts: "There is," the Court observed, "simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving

8

evidentiary conflicts without hearing live testimony." (*Rosenthal v. Great Western Financial Securities Corp.* (1996) 14 Cal.4th 394, 414.)

Indeed, there is a strong reason to *not* hold evidentiary hearings in connection with disqualification motions. As courts have long recognized, testimony (and cross examination) concerning confidential communications could have "the ironic result of disclosing the former client's confidences and secrets." (*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1453; see also *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 583, fn. 5 ["[A] motion to disqualify normally should be decided on the basis of the declarations submitted by the parties," and evidentiary hearings "should be rare"].). Accordingly, in considering motions to disqualify, trial courts frequently resolve conflicts in declarations without conducting evidentiary hearings. (See, e.g., *Victaulic Co. v. American Home Assurance Co.* (2022) 80 Cal.App.5th 485, 511; *Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1087-1092; *Ochoa v. Fordel, Inc.* (2007) 146 Cal.App.4th 898, 910; *Pound*, *supra*, 135 Cal.App.4th at pp. 74, 76; *Gregori v. Bank of America (*1989) 207 Cal.App.3d 291, 309.) The trial court did not abuse its discretion in doing the same here.

Appellant argues that the trial court lacked substantial evidence that Mr. McManis received confidential information concerning her elder abuse claims. The substantial evidence standard, however, requires only that evidence be " 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials which the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.) As Daniel personally participated in the initial consultation with Mr. McManis, he was an eyewitness to the consultation, and his testimony concerning what happened during it satisfies the substantial evidence standard. It is well-settled that " '[t]he testimony of a witness, even the party himself, may be sufficient' " (*Mix*, *supra*, 14 Cal.3d at 614, quoting 6 Witkin, Cal. Procedure (2d ed.) § 248, p. 4240) and thus "constitute[s] substantial evidence' " (*Chase v. Wizmann* (2021)

9

71 Cal.App.5th 244, 257; see also *DeNike v. Matthew Enterprises, Inc*. (2022) 76 Cal.App.5th 371, 381 ["The testimony of a single witness may constitute substantial evidence as long as it is not physically impossible or inherently improbable."]). Moreover, this is true where, as here, the witnesses' testimony is in the form of declarations. (See, e.g., *In re Internet Lending Cases* (2020) 53 Cal.App.5th 613, 626; *City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 466; *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201.)

Appellant contends that the trial court erred by not weighing five factors identified in *In re Zimmerman* (1993) 16 Cal.App.4th 556, 564. *Zimmerman*, however, did not use the factors in question to determine whether counsel was in actual possession of confidential information because the movant did not assert actual disclosure of specific confidential information. (*Id*. at p. 565.). Instead, *Zimmerman* applied the " 'substantial relationship' test" in determining whether to presume possession of confidential information (*id*. at p. 563), and it used the five factors in question—the nature and extent of the attorney's involvement, the factual and legal similarity of the case, the time spent by the attorney, the type of work performed, and the attorney's possible exposure to the formulation of policy and strategy—in applying the substantial relationship test. (*Ibid*). Neither the substantial relationship test nor the factors *Zimmerman* used in applying it need be employed where, as here, disqualification is sought based on actual rather than presumed possession of confidential information.

Observing that there is no mention of a "note" in the complaint, in her reply brief appellant questions whether the "note" that Daniel contends he disclosed is material to her elder abuse claims. As appellant did not dispute that her elder abuse claims involved a note in either her briefing in the trial court or her opening brief, this objection has been forfeited. (See, e.g., *People v. Ng* (2022) 13 Cal.5th 448, 568, fn. 13 [" 'It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party.' "]; *Hewlett-Packard Co. v. Oracle Corp*. (2021) 65

10

Cal.App.5th 506, 548 [" ' "As a general rule theories not raised in the trial court cannot be asserted for the first time on appeal" ' "].)  Application of this restriction is especially appropriate here, as in the trial court it would have been relatively easy to determine whether a promissory note was issued in connection with the loan that appellant contends Daniel improperly obtained.

Finally, appellant notes that disqualification motions are often filed for improper tactical reasons that threaten the integrity of the judicial process and that the order disqualifying McManis Faulkner, which has represented her for more than three years in the family disputes underlying this case, will impose an emotional as well as a financial toll on her.  As the Supreme Court has recognized, these are legitimate and important concerns.  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.)  However, where, as here, a former client seeks disqualification based on counsel's violation of the duty of confidentiality, more than just the interests of the parties to the case are at stake.  The legal system's need to maintain ethical standards is also implicated, and the Supreme Court has determined that "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar."  (*Ibid*.)  Consequently, "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process."  (*Ibid*.)  We therefore conclude that the trial court did not abuse its discretion in ordering disqualification.

### III.   DISPOSITION

The disqualification order is affirmed.

11

_____
BROMBERG, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
DANNER, J.

Hudson v. Hudson
H049893